JESSEE BURNHAM v. F. W. CHANDLER.

Where the plaintiff sued as assignee of an account, by virtue of an assignment of a schedule of debts in which the amount sued for was stated as a single item, it was held that the plaintiff might show that the amount was a balance after credits claimed by defendant, in order to identify it with the account sued on.

The recording of instruments which are not required or affirmatively permitted by law to be recorded, is not notice.

See this case for what is said about the manner of availing oneself of certain defences.

Where a witness testified that he had been salesman and book-keeper of the party for a certain time during the currency of the account; that he sold many of the articles charged during that time, and saw them delivered; that he believed the mercantile books of the party to have been kept correctly during said time; that he posted the books from the time he commenced until the party quit business, or had them posted under his supervision; that he knew nothing of the correctness of the charges in the day-book after he left; that the books produced in Court are the books of the party, referred to by witness, it was held that the books were sufficiently proved for the time witness was book-keeper and salesman, but that for the subsequent time they were not sufficiently proved.

Appeal from Fayette.

*W. G. Webb* and *J. T. Harcourt*, for appellant.

*Chandler, Hamilton, Anderson* and *Bird*, for appellee.

LIPSCOMB, J.   This suit was brought by Chandler, on an open account, alleged to be due from Burnham to Ross, and assigned to Chandler, as trustee for the benefit of Rice & Nichols, to whom Ross was indebted.   The deed of assignment is alleged to have been executed on or about the 13th day of August, 1852, and filed for record in the office of the Clerk of the County Court, on the 14th of the same month.   The suit was brought to recover seven hundred and thirty-four dollars and sixty cents; and in the deed of assignment, in schedule of

the various debts assigned, is included Jesse Burnham, $734 60–100. The account attached to the petition is for a much larger amount, and plaintiff alleges in his amended petition that this account had been reduced by credits to the amount stated in the assignment. To this the defendant objects, that it is not stated in the assignment to be the balance of Burnham's account, but an open account for so much, and contends that the debt sued for is not the one assigned.

The object of the assignment was clearly to set over that amount due on open account from Burnham to Ross, for the benefit of Rice & Nichols, the creditors of Ross ; that object will not be defeated by a mistake or mere inadvertency in not calling it the balance of Burnham's account. We think the objection was not well taken.

There is an objection to the charge of the Court to the jury, in the part of the charge as follows : " Determine from the " evidence the amount that·was due, if anything, from the de- " fendant, at the time of the assignment to the plaintiff. What- " ever may have transpired between the defendant and Ross, " after the assignment was made, is not to be considered by " you, to the prejudice of the plaintiff. The rendering an ac- " count, by Ross to Burnham, after the assignment was made, " is no evidence of the state of account between them, to the " prejudice of Ross' assignee." It is supposed that this part of the charge had direct reference to the evidence offered by Burnham, of an account rendered by Ross to Burnham, and made out by the clerk of Ross under his direction, in which the clerk swears that the account was corrected in the charges for money advanced, Ross declaring that Burnham had returned the money. This was done a month or six weeks after the date of the assignment.

This charge is objected to in this, that it gives effect to the assignment from its date, and not from the time that the party whose account had been assigned, had notice of the assignment. There is no evidence of direct notice to Burnham of

the assignment, at the time of receiving the account rendered to him under the direction of Ross. The assignment was filed for record the day after it was executed, but as the registration law does not require or authorize the instrument of assignment, referred to in this case, to be recorded, (Hart. Dig. Art. 2787,) the record would not be notice of the existence of such instrument. This doctrine is believed to be well settled. The assignment could not oppose any obstacle in the way of any payment or arrangement between Burnham and Ross, before he had notice of the assignment; and had the question been raised in the Court below, of the necessity of notice to · bind Burnham, and the Judge had decided that Burnham was bound from the date of the assignment, notwithstanding there was no evidence of notice, we would have been bound to reverse the judgment, upon that ground. If we were to reverse the judgment on the ground that the general charge of the Judge was broad enough to have borne a construction erroneous in law, as an abstract proposition, we would certainly be deciding a case on a question not made in the Court below, and would be going beyond the revisory jurisdiction of this Court. This Court will judicially know and decide upon some questions not raised in the Court below, and of this sort are questions of jurisdiction, or matters that could have been available in the Court below by general demurrer, or motion in arrest of judgment for want of showing, in the proceedings, a cause of action. But all question arising in *pais*, of the nature and effect of testimony, must appear to have been presented directly or by implication. Had it been true, that Burnham had no notice of the assignment, or that such notice had not been carried home to him, his counsel should have asked the charge to the jury on that particular point. But it must be inferred from the fact that the question of notice was not presented in the Court below, that it was known to Burnham at the time the assignment was made.

It is alleged that the Court erred in refusing to give the

several charges prayed by the defendant, in reference to the proof of the open account assigned to the plaintiff. We will not recite those charges asked and refused, because they go to the question of the sufficiency of the book proof offered by the plaintiff, and we believe the same question is, on the motion for a new trial, the insufficiency of the evidence to support the verdict of the jury. The question as to proof of an open account by the books of a merchant with whom the account accrued, has been fully discussed in our Court in the case of Underwood v. Parrot, (2 Tex. R. 168,) which, upon the question of this kind of proof, has been regarded as the leading case, and as settling the law upon a firm foundation. After a critical review of all the American cases on the subject, Judge Wheeler concludes this branch of his subject as follows : " And " taking the American cases together, in the language of Judge " Cowen, in the opinion before noticed, they form a commentary " upon this kind of evidence, clear and copious. And the re- " sult is, that original entries, attested by the man who made " them, may be read to the jury, though he remembers nothing " of the facts which they record." It will be seen that the original entries must be produced, and the person who made the entries. To the rule, perhaps a distinction would be admitted, where the person who had made the entries was dead, or his evidence could not be procured ; the proof that such person was the clerk who made the entries, and of his handwriting, ought to be received. In the case before us Mr. McAshan testified that he was salesman and book-keeper of Ross, in his store, from March or April, 1851, till about the first of November of the same year ; that he sold a good many of the articles charged in plaintiff's account, of that year, and saw them delivered to defendant ; that he believed the mercantile books of Ross to have been kept correctly during the time of his stay with him ; that he posted the books of Ross from the time he commenced with him, or had them posted under his supervision, until Ross closed his mercantile business ; that he knew nothing of the correctness of the charges in the

day-book of Ross, after he left his mercantile establishment. He swears the books brought into Court are the books of Ross. It is not proved by whom the day-book of Ross was kept after the witness McAshan left. It was proved that Childs was a clerk, but it is not proved that he made any sales or entries in the day-book. From the time that witness McAshan left, there is no proof that comes within the rule in Underwood v. Parrot; the mere production of the day-book, without showing by whom the entries were made, or proof of the delivery of the articles, is not sufficient. The evidence of McAshan, so far as it goes, from his own knowledge whilst he was both salesman and book-keeper, is regarded as proper evidence. The time when the entries in the books were not proved, embraces a large portion of the account; which was not proved, and consequently the account in all of that time should be stricken out; but as this was not done, and we have nothing before us by which to make the correction, the judgment must be reversed and the cause remanded for a new trial.

Reversed and remanded.