G. E. LAWRENCE, Trustee in Bankruptcy of the Estate of Standard Laundry & Cleaning Machinery Company, Appellant,

v.

DELTA METALS, INC., Appellee.

No. 18164.

United States Court of Appeals
Fifth Circuit.

June 30, 1960.

Wm. Madden Hill, Ungerman, Hill, Ungerman & Angrist, Dallas, Tex., for appellant.

M. Sims Davidson, Eldridge, Goggans, Davidson & Silverberg, Dallas, Tex., for appellee.

Before RIVES, Chief Judge, and JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

Standard Laundry & Cleaning Machinery Co., Inc., was adjudicated a bankrupt on November 7, 1957. We here review an order by which priority was given to a claim of the appellee, Delta Metals, Inc., against the bankrupt's estate.

The Standard Company, prior to its bankruptcy, had been in the business of manufacturing machinery for use by laundries and dry cleaning establishments. Delta Metals had been selling Standard stainless steel and other materials under an asserted arrangement, as set forth by Delta Metals in its claim filed in the bankruptcy proceeding, whereby the Standard Company would assign to Delta Metals the account receivable representing the sale price of machinery for which specific material was being furnished. Standard, so Delta Metals claimed, would ship its finished machinery and draw a draft payable to Delta Metals on its customer with a bill of lading attached. On payment of the draft, Delta Metals, so it said, would withhold the amount payable to it and remit the balance to the Standard Company.

On August 19, 1957, the Standard Company requested Delta Metals to sell and deliver to Standard a quantity of stainless steel sheets to be used in making machinery for which Standard had an order from Miami, Florida. In connection with this order President Pugh

wrote Delta Metals a letter [1] indicating an intention that thereafter, when the finished product for which Delta Metals was to supply some of the materials was shipped, Delta Metals would have an assignment evidenced by a sight draft payable to it, and security in the form of an order bill of lading. Delta Metals delayed filling the order as it had learned that a creditors' committee was to take over the operation of the Standard Company. Delta Metals was assured by members of the creditors' committee. that the company would continue under the guidance of the committee. On September 30, 1957, Delta Metals delivered the steel sheets to the Standard Company.

The machine, for which the steel had been purchased, was made up and shipped by the Standard Company to its customer. A sight draft, to which the bill of lading was attached, was drawn for the price of the machine. It was not made payable to Delta Metals. Payment of the draft was made to the Standard Company and out of the proceeds a cashier's check payable to the Collector of Internal Revenue was purchased and used for the payment of taxes owing to the United States. The Standard Company was adjudicated a bankrupt on an involuntary petition. George E. Lawrence was selected as Trustee by the creditors and his appointment was approved by the Referee. Delta Metals filed its claim in bankruptcy asserting that it had a lien by virtue of an assignment and that funds assigned to it had been used in payment of an obligation to the United States. On the theory that its money had been used to pay the tax of the United States, Delta Metals contended that it was subrogated to the priority of the United States. The Referee allowed the claim of Delta Metals as an unsecured claim. The matter was heard by the district court on a petition to review the order of the Referee. The court held that there was a valid assignment between the Standard Company and Delta Metals, and that Standard received payment in violation of its understanding with Delta Metals and became a constructive trustee of the funds which were used to pay the tax obligation with the result that Delta Metals was subrogated to the priority of the United States.

Delta Metals did not have any right to be subrogated to the Government's priority unless it had a valid pledge of or lien upon the account receivable which could have been asserted in bankruptcy had it been unpaid at the time of the adjudication. It is not enough that the purported assignment might have been valid as between the parties. A Texas statute provides for the protection of assignments of accounts receivable by the filing of notices in the office of the County Clerk of the county of the assignor's residence. The statute prescribes the form, manner of execution and delivery of the assignment, and its contents. Vernon's Tex.Civ.Stat.Ann. Art. 260–1. See 6 Tex.Jur. 441, Assignments § 50. There was no attempt to comply with the statute by Standard or by Delta Metals. In the absence of such compliance there was no protected assignment and no lien which could be upheld in the administration of the bankrupt estate of the assignor. Republic National Bank of Dallas v. Vial, 5 Cir., 1956, 232 F.2d 785; Keeran v. Salley, Tex.Civ.App., 244 S.W. 2d 663; McLachlan, Bankruptcy 266, § 232.

1. "August 20, 1957
"Delta Metals, Inc.
"Dallas, Texas
"Attention Mr. R. E. Carlson
"Gentlemen:
"In regard to our conversation of today with regard to our order # 6297 dated August 19, 1957.
"We are intending to ship Sight Draft, Bill of Lading attached, to the Laundry & Dry Cleaning Company, 820 N.W. 49th Street, Miami, Florida, two-32x50 Stainless Steel Laundry Washers in the amount of $2,237.14. Out of this amount, you are to deduct the amount of our order # 6297 and the balance is to belong to us.
"Thanking you for handling this matter for us, we are
"Very truly yours,
"/S/ C. B. Pugh"

We conclude that the district court's determination that Delta Metals was entitled to be subrogated to the priority of the Government is erroneous. For further proceedings in keeping with our conclusion, the judgment of the district court is

Reversed and remanded.