**PARKER SQUARE STATE BANK et al.,**
Appellants,

v.

**TRIANGLE SUPPLY COMPANY et al.,**
Appellees.

No. 3768.

Court of Civil Appeals of Texas.

Eastland.

Jan. 25, 1963.

Rehearing Denied Feb. 15, 1963.

Lee Humphrey, W. H. Sanders, Ernest Robertson, Wichita Falls, for appellants.

Ross H. Scott, Dallas, Jack Bryant, Raleigh. Brown, Abilene, Robert E. Bowers, Breckenridge, Mike Lee, Abilene, Ronald Stephens, Graham, Kenneth J. Wise, Wichita Falls, Gary Cole, Jr., Asst. U. S. Atty., Ft. Worth, H. G. Andrews, Jr., Stamford, Byron Scarborough, Ft. Worth, for appellees.

GRISSOM, Chief Justice.

Wise and Steadham Drilling Company drilled many oil wells for Fletcher Oil & Gas Drilling Corporation. As each well was completed Wise and Steadham presented to Fletcher an invoice and it approved the account and agreed that it should be assigned to a designated assignee. Although payment was due upon completion of each well, Fletcher ordinarily paid its accounts thirty to sixty days after an invoice was so presented and approved. In the meantime, to carry on their business, Wise and Steadham assigned the accounts to secure loans.

On March 15, 1961, Fletcher owed Wise and Steadham and their assignees $164,-690.99, evidenced by thirteen invoices which

had been approved by Fletcher upon completion of thirteen wells by Wise and Steadham. On or before March 15th, all of said invoices and the accounts evidenced thereby had been assigned for a valuable consideration to Parker Square State Bank, City National Bank in Wichita Falls or Time Equipment and Supply Company. Said assignees and Triangle Supply Company, Carter Engine and Equipment Company, L. H. Strand and Kelley Supply Company, as garnishing creditors, United States of America, as a tax lien creditor, Tucker and Stephens Bulldozers, Inc., as a mechanic's and materialman's lien and judgment creditor, and others, as general creditors, claimed the money owed by Fletcher to Wise and Steadham or their assignees. Fletcher paid into court $54,624.77, and impleaded all of said parties for the purpose of having the court determine their respective rights to said funds. The District Court granted priority of right to receive such funds to said subsequent lien creditors in preference to Parker Square, City National and Time Equipment as to the assignments which had not been filed for record. In other words, the court held that the lien creditors who fixed their liens after said assignments had been delivered had a right to said funds over the assignees because notice of the assignments had not been filed for record. Parker Square State Bank, City National Bank and Time Equipment and Supply Company have appealed.

The principal question presented is whether the lien creditors who acquired liens after delivery of valid written assignment of the accounts, acquired rights to the funds superior to that of the assignees because the assignees had not filed notice of their assignments. This question must be determined by an interpretation of Article 260–1, Vernon's Ann.Civ.St., which provides in Section 2 that assignments of accounts may be protected by execution and delivery of written assignments and by filing notice thereof. Section 6 provides that

"Whenever any person * * * shall in good faith take a protected assignment of any account * * * all creditors of, and all subsequent assignees, purchasers, and transferees of or from the assignor shall be conclusively deemed to have received notice of such assignment, dating from the time of the filing for record of the notice of assignment hereinabove provided; and after such filing for record, no purchaser from the assignor, no creditor of any kind of the assignor, and no prior or subsequent assignee or transferee of the assignor, holding an assignment not protected, or holding as assignment under a notice of assignment subsequently filed for record, shall in any event have, or be deemed to have acquired, any right in the account * * so assigned or in the proceeds thereof, or in any obligation substituted therefor, superior to the rights therein of the assignee named in such prior protected assignment."

In Section I an "account" or "account receivable" is defined so as to exclude therefrom the right to payment of money secured by a chattel mortgage or any other instrument which may be filed for record and the assignment of rights subject to special statutory provisions of the State or Federal Government relative to the rights of creditors or successive assignees.

■ Prior to the enactment of Article 260–1, the law in Texas was, as to the rights of assignees, that the first in point of time had the superior right. This seems to have been the majority view in the United States. Some states, notably Pennsylvania and California, adopted the English rule that the first assignee to give notice to the debtor had the prior right. Under the common law in Texas, if the contract was in existence at the time of the assignment, no creditor of the assignor could acquire rights therein superior to that of a prior assignee, regardless of notice to the debtor. Hess & Skinner Engineering Company v. Turney, 110 Tex. 148, 216 S.W. 621, 623, 25 Tex. Law Rev. 607. Unless there has been a failure to

comply with a recording statute enacted for the protection of creditors, generally, an assignee takes priority over a subsequent lien creditor of the assignor who had no lien at the time the assignment was made. 6 C.J.S. Assignments § 92, p. 1149. In 1855, the Texas Supreme Court held that Texas had no law either requiring or authorizing recording of assignments and that in the absence of such a statute the recording of an assignment did not give notice of its existence. 1 Burnham v. Chandler, Trustee, 15 Texas 441, 443. In 1943, the United States Supreme Court in Corn Exchange National Bank v. Klauder, Trustee, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, 144 A.L.R. 1189, held (in a Pennsylvania case, in which state, as between assignees, the law gave priority to the assignee who first gave notice of the assignment to the debtor,) that assignments of accounts which, by reason of failure to give notice of the assignment to the debtor, were, by local law, inferior to the rights of a subsequent assignee who gave notice, were preferences and inoperative against the assignors' trustee in bankruptcy. It held that the amended bankruptcy act provided a new test for the purpose of striking down secret liens and included a failure to record which could be asserted by a bona fide purchaser or a lien creditor of the transferor against the transferee.

It has been said that as a result of that decision thirty-five states have enacted statutes for the protection of assignees and lien creditors against the trustee in bankruptcy, who then apparently had the rights of a bona fide purchaser or lien creditor. Some statutes clearly provided that an assignee's failure to record notice of his assignment enabled a creditor to establish superior rights by garnishing the account, "and that is the critical test adopted in the Bankruptcy Act." 53 A.L.R.2d 1392, note. In a note in 246 F.2d at page 810, it is stated that the Bankruptcy Act was amended in 1950 to remove the threat that an assignment might be vulnerable to a claim by a trustee—as a preferential transfer merely because a

subsequent assignee could attack it and that such amendment restored assignments to their pre-section 60 status in respect to a claim by a trustee in bankruptcy. The California Statute expressly provides that no assignment shall be valid against creditors or subsequent assignees without notice unless the assignment is recorded. With reference to that statute the court in Costello v. Bank, 246 F.2d 807, 811, said: "Actual notice to the obligor, which hitherto sufficed, was no longer enough. The statute also revised existing law as it related to creditors of the assignor. It placed such creditors in the same position vis-a-vis the first assignee as successor assignees in respect to priority of rights. This was more than Klauder compelled for it had long been the law in California that a non-notifying assignee was entitled to priority over creditors of the assignor. Thus, the 1943 statute required the assignee to file the assignment to perfect his rights as against both subsequent assignees and creditors of the assignor."

In Keeran v. Salley, Tex.Civ.App., 244 S.W.2d 663, 666, (Writ Ref.), Keeran, a construction contractor, assigned to the Alice Bank a debt it expected Sun Oil Company to owe him by virtue of a contract not then in existence. Keeran employed Salley to do work in performing a contract Keeran later obtained from Sun. Notice of the assignment to the bank was filed for record. Thereafter, Salley sued Keeran for his debt and served a writ of garnishment on Sun. The right of the garnishing creditor to the money owed by Sun to Keeran was held superior to that of the prior assignee. The reason was stated by Judge Norvell as follows:

> "The filing of the notice of assignment of July 14, 1949, does not give the bank a prior right to the fund impounded by the writ of garnishment for the reason that the statute, Article 260–1, relating to assignment of accounts, defines the word 'account' or 'account receivable' as meaning, 'an existing or future right to the payment of money presently due, or to become due under an ex-

isting contract: * * *.' The contract which gave rise to the 'account' here involved was obviously not in contemplation when the notice was executed."

It must be implied from this decision that it was believed that Article 260–1 had changed the rule that an assignee has priority over creditors who had no lien at the time the assignment was made, but that, because the assignment did not come within the definition in Article 260–1 of assignments which might be protected by recording, the recording of such an assignment did not protect the assignee against a creditor who subsequently fixed a lien by garnishment.

It was virtually so interpreted in Republic National Bank of Dallas v. Vial, 232 F.2d 785. That was a contest between an assignee and a trustee in bankruptcy over the right to collections from accounts assigned to the bank. The bank contended that by virtue of recorded notice of its assignment its rights were superior to that of the trustee in bankruptcy. The trustee objected to allowance of the bank's claim as a secured claim because, among other reasons, the assignment was not protected under Article 260–1. The court held that because the account assigned to the bank was not in existence when notice of assignment was recorded that the bank's assignment was not within the protection of Article 260–1. The decision was based upon Keeran v. Salley. The court said:

"This decision thus established the proposition that the filing of Notice of Assignment under Art. 260–1 protected only accounts which were in existence when the Notice was executed. This is dispositive of the issue here. Accordingly, we conclude that appellant did not acquire a valid lien on the disputed collections because none of the assignments of the accounts here involved was protected by the Notice of Assignments.

"We are also of opinion that appellant's rights were inferior to those of the trustee because under the 1950 amendment to Section 60, sub. a(6) of the Bankruptcy Act, Congress provided that the recognition of equitable liens would be denied where, as here, available means of perfecting legal liens have not been employed. Consequently, under none of the assignments here at issue did the appellant acquire a lien on collections made during the four months period which was superior to that of the trustee."

This case and the Keeran case are some justification for, if they do not compel, the conclusion that lien creditors now have rights superior to that of a prior assignee who has not recorded notice of an assignment which is within the protection afforded recorded assignments described in Article 260–1. After the decision in the Keeran v. Salley the Legislature, in 1955, amended Article 260–1, so as to include in the definition of "accounts" or "accounts receivable" the right to payment of money to become due under "future" contracts made during the effective period of the notice of assignment.

In Lawrence v. Delta Metals, Inc., 280 F.2d 86, 87, Delta Metals filed a claim in bankruptcy asserting it had a lien by reason of its assignment and by subrogation because funds assigned to it had been used to pay the bankrupt's tax to the United States. The court said that Delta Metals did not have a right to be subrogated to the priority of the Government unless it had a lien upon the account which could have been asserted in bankruptcy; that it was not enough that the assignment was valid between the parties; that Article 260–1 provides for the protection of an assignment of an account by filing notice of the assignment but, because that statute was not complied with, there was no protected assignment and no lien which could be upheld in the administration of the bankrupt's estate.

Unfortunately, we do not have the statutes in other states that are said to have

been enacted as a result of the decision in Corn Exchange National Bank v. Klauder. However, we know from the decisions that Florida statute in clear language provides that the rights of lien creditors are superior to the rights of prior assignees who do not record notice of their assignments. In 53 A.L.R.2d 1392, we find this enlightening note:

"Likewise, the appellant's contention that the Florida statute was not intended to protect creditors from secret, unrecorded assignments of accounts receivable, citing Wells v. Place, DC ND Ohio, 92 F.Supp. 473, is rationally untenable in the light of the words of § 524.04(2):

" 'A protected assignee takes subject to: (a) Judicial liens on the account at the time his assignment became protected: (b) An assignment to another person which was protected before his assignment, except that an assignee takes priority over another assignee who files later than he did, regardless of the relative dates of their assignment.'

"We may judicially note that this statute, like those in 35 other states was adopted as a direct result of the Chandler Act amendment to § 60, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a and its application in Corn Exchange Nat. Bank & Trust v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, 144 A.L.R. 1189. We incline to the view that the draftsmen of the Florida statute and the legislature were aware of the provision of the Bankruptcy Act then giving the trustee in bankruptcy the rights of any bona fide purchaser from or any creditor of the bankrupt. The effect of the language used by the legislature is to give the trustee in bankruptcy a better right than an unrecorded assignee of accounts receivable (as the statute defines them); and whether that was a primary motive of the legislature or not, such was clearly the Congressional intent in § 60, sub a. Wells v. Place, supra, is not in point, because the Ohio Statute involved there, Ohio Gen. Code § 8509–3, since amended, referred only to subsequent assignees and made no mention of creditors' rights, as the Florida statute does. The Florida statute is clear that an assignee's failure to record would enable an actual creditor of the assignor to establish superior rights by garnishing the account, and that is the critical test adopted in the Bankruptcy Act."

Article 260–1 does not so clearly provide that an assignee's failure to record enables a creditor to establish superior rights by garnishing the account, or otherwise fixing a lien, but we think such was its purpose.

■ We are indebted to appellants for excellent briefs. Nevertheless, we are forced to the conclusion that the trial court correctly held that the rights of the appellants as to the accounts which they failed to file notice of their assignments were inferior to the rights of subsequent lien creditors.

In Scarborough v. Victoria Bank & Trust Company, Tex.Civ.App., 250 S.W.2d 918, 921 (Writ Ref.), it was expressly held that "a change is made in the common law rule as to priority of assignments of accounts. This was accomplished by a setting forth of a method whereby a notice of assignment could be filed in a public place and thus become 'protected assignment.' "

Appellants contend that the judgment is contrary to the decision in Quinn v. Dupree, 157 Tex. 441, 303 S.W.2d 769, 775. Our Supreme Court did sustain the judgment of the trial court which held that the right of an assignee was superior to that of a subsequent garnishing creditor. The Court of Civil Appeals reversed and rendered judgment for the garnishing creditor, because it held the assignment was void as a matter of law. The Supreme Court discussed only that question and held that

whether the assignment was void depended upon questions of fact which had been decided by the trial court and that its invalidity had not been established as a matter of law. The opinions do not disclose whether notice of the assignment was recorded. Article 260–1 was not mentioned. If the assignment was recorded our interpretation of the statute would require the judgment rendered by the Supreme Court. That court was careful to note, after deciding that the assignment was not void as a matter of law as held by the Court of Civil Appeals, "This disposes of all of the grounds upon which the Court of Civil Appeals reversed the judgment of the trial court." Perhaps, the Supreme Court was reluctant to interpret a statute when its interpretation was not called for by any point of error presented. (See Points 4 on which writ of error was granted in Mason v. Mason, Tex.Civ.App., 357 S.W.2d 442. The Texas Syllabi, January 16, 1963.)

Appellants say that the emergency clause of Article 260–1 and all its amendments show it was enacted for the benefit of banks, so that they could safely loan money on the security of assigned accounts. The statute does provide a way that an assignee may protect itself against subsequent assignees and lien creditors, that is, by filing notice of its assignment.

We have considered the cases cited by appellants and their forceful arguments. We think their cases may be distinguished as suggested in appellees' briefs and that they do not require a conclusion contrary to that announced.

 We have held that the rights of subsequent lien creditors are superior to the rights of assignees who fail to protect their assignments by filing notice thereof. This answers the claim of Parker Square and Time Equipment that the court erred in granting priority to the government's tax lien over their prior unrecorded assignments. We agree with the further contention of the government that as a matter of federal law, since Texas requires recording to protect assignments against claims of subsequent lien creditors, the assignees' liens were not sufficiently perfected or choate to prime a subsequent federal tax lien. United States v. Morrison, 247 F.2d 285, 288.

We think the court correctly held the parol transfer of an account to Time Equipment was not a sale but was an assignment.

 Appellants complain because attorneys' fees for the garnishee and attorney ad litem and other costs were ordered paid out of the fund. The garnishee, Fletcher, paid part of the money it owed Wise and Steadham into court, impleaded the assignees and lien creditors and asked the court to determine their respective rights to the fund. It was necessary for Fletcher to take that action. It had no duty to take the risk of determining which of the claimants was entitled to the money it owed Wise and Steadham. It properly employed attorneys, impleaded all claimants and paid the money into court. Texas Rules of Civil Procedure, rule 43. The lien creditors established superiority of their rights to the funds over the claims of appellants, as assignees. Appellants lost in the contest. We think appellants were not injured by the order as to costs and that the court did not err in ordering them paid out of the fund. Greer v. Franklin Life Ins. Co., 148 Tex. 166, 221 S.W.2d 857, 861.

All points lawfully presented have been considered and are overruled. The judgment is affirmed.