**UNITED STATES of America, Appellant,**

v.

**RAY THOMAS GRAVEL COMPANY, Inc., et al., Appellees.**

**No. 4163.**

Court of Civil Appeals of Texas.

Waco.

Nov. 21, 1963.

Rehearing Denied Dec. 12, 1963.

Barefoot Sanders, U. S. Atty., Charles D. Cabaniss, Asst. U. S. Atty., Louis F. Oberdorfer, Meyer Rothwacks, Joseph Kovner, Earl J. Silbert, Washington, D. C., for appellant.

John A. Kerr, Joseph P. Burt, Fay Prescott, Sheldon Anisman, Ft. Worth, for appellees.

WILSON, Justice.

The questions presented are whether the federal tax lien fixed pursuant to 26 U.S. C.A. § 6321 is inferior, as the trial court concluded, to three other competing claims.

We adopt appellant's statement of the facts:

On May 31, 1960, Seabreez Pools, Inc., by contract agreed to construct a swimming pool for Glen V. Paden. Paden agreed to pay Seabreez $5,000 upon the completion of the swimming pool and in addition to pay for all labor, taxes and insurance, material, swimming pool equipment, equipment rental, and any other costs owing in the construction of the pool. Seabreez began construction of the pool on or about May 31, 1960.

Prior to September 9, 1960, the United States of America assessed and filed liens for federal taxes against Seabreez in the amount of $3,905.70. On that date Seabreez in writing assigned to W. C. Turner $2,335.34 of the amount it was to be paid under its contract with Paden. This amount was subsequently reduced to $2,142.13. The assignment was accepted in writing by Paden, but was never recorded.

On November 4, 1960, Ray Thomas Gravel Company, Inc., filed an action for debt in the District Court of Tarrant County against Jay W. Ratliff and Seabreez. On January 5, 1961 that court adjudged that Ratliff and Seabreez were indebted to Ray Thomas Gravel Company, Inc., in the amount of $1,345.01. On November 4, 1960, Ray Thomas Gravel Company, Inc. also filed garnishment proceedings in the District Court of Tarrant County against Paden as garnishee, alleging that he was indebted to Ratliff and Seabreez. The writ of garnishment was served on Paden on November 9, 1960, and he answered, on November 23, 1960, that he was not so indebted. Since Paden, the garnishee, was a resident of Johnson County, the Tarrant County court transferred the garnishment proceeding to the District Court of Johnson County. The latter court concluded that at the time the garnishment proceeding was instituted Paden was indebted to Seabreez under their contract in the sum of $2,286.07 for equipment rental and materials furnished.

After the garnishment proceeding was transferred to the District Court of Johnson County, Paden, on August 17, 1962, filed his bill of interpleader in which he joined Ray Thomas Gravel Company, Inc., Seabreez Pools, Inc., Jay W. Ratliff, W. C. Turner and W. E. Turner, and the United States of America. Prior to this date, the United States had assessed and filed additional tax liens against Seabreez, bringing the total of its tax liens to $7,809.-42, plus interest.

The district court concluded that Paden, indebted to Seabreez under the contract in the amount of $7,286.07, properly filed his bill of interpleader. For the services of his attorney in this proceeding and the garnishment proceeding, the District Court awarded Paden $1,000. It also determined that Seabreez was indebted to the Turners in the amount of $2,142.13, to Ray Thomas Gravel Company, Inc., in the amount of $1,345.01, and to the United States of America in the amount of $7,809.42, plus $1,307.77 interest computed through March 28, 1963. It further ruled that the attorney's fees, the assignment by Seabreez to the Turners, and the garnishment lien of Ray Thomas Gravel Company, Inc., all had

priority over the tax liens of the United States.

■ We recognize appellant's contention that the standing of the competing claims in relation to the federal tax lien is largely a federal question. United States v. Acri, 348 U.S. 211, 213, 75 S.Ct. 239, 99 L.Ed. 264. We adopt also the principles announced in United States v. Pioneer American Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, including those that priority is governed by the "first in time, first in right" rule; that under the present facts the federal tax lien arises when it is assessed; and that whether liens created by state law are inchoate or choate, so as to become attached for priority purposes, is tested by whether they are perfected, i. e., they become choate when the identity of the lienor, the property subject to the lien, and the amount are established.

### 1. Attorney's fees.

Upon original joinder in the bill of interpleader, appellant was dismissed on its plea of sovereign immunity. It thereafter filed a motion for leave to voluntarily intervene in the same interpleader action, which leave was granted. It then intervened, asserting claim to the fund in the registry.

■ Rule 43, Texas Rules of Civil Procedure is derived from and is identical in substance to Rule 22(1) Federal Rules of Civil Procedure. The general rule is summarized, 48 A.L.R.2d 192: In the absence of any statutory provisions governing the matter, notably in the federal courts and in Texas, "a disinterested stakeholder who has reasonable doubts as to the party entitled to the funds or property in his possession, and who in good faith interpleads the claimants, is entitled to an allowance for attorneys' fees." Nearly 100 federal decisions are cited in support of the text. This has consistently been the rule in Texas. Nixon v. Malone, 100 Tex. 250, 98 S.W. 380, 99 S.W. 403; Greer v. Franklin Life Ins. Co., 148 Tex. 166, 221 S.W.2d 857.

Appellant relies on the holding in United States v. Pioneer American Ins. Co., above, that attorneys' fees provided for in a mortgage were subordinate to the federal lien for taxes. There the secured note stipulated only that the maker would pay "reasonable" attorneys' fees in an unliquidated amount, and it was held this portion of the lien was inchoate. In considering the attorney's fee we are not here dealing with a lien or with a contractual debt or right. In United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268, the United States was named and served as a party to a state court garnishment proceeding by a bill of interpleader. Upon removal to federal court, the United States was dismissed as a party to the interpleader action. It did not then seek to re-enter the suit, but filed a separate complaint for foreclosure of its tax lien. The garnishee's attorney fee allowed, which was the subject of the holding, was incurred in the garnishment proceedings to which the United States was not properly a party. That holding is applicable here in so far as the attorney's fee was awarded in connection with the garnishment. It is not applicable to such fee as was awarded for services in the interpleader proceedings.

■ Appellant was not required to utilize the services and machinery of the state court; it could have protected its rights independently of the interpleader. Indeed, it successfully objected to involuntary subjection to the jurisdiction of that court and its action on the bill, and thereafter voluntarily invoked that same jurisdiction by obtaining leave to intervene. By so seeking and accepting the remedy made available by the law of this state, it became amenable and subject to the law governing that remedy as fully as if it had initiated the action. It will not be permitted to deprive the stakeholder of rights to which he would be otherwise entitled, any more than would any other claimant to the fund. Immedia: ·ly before appellant entered the proceedings as intervenor, the court was authorized to award an attorney's fee to the stakeholder

from the fund. An intervenor takes the case as he finds it. Corzelius v. Crosby Producing & Royalty Co., Tex.Civ.App., 52 S.W.2d 270, 272; Lynn County School Board v. Garlynn, etc. Dist., Tex.Civ.App., 118 S.W.2d 1070, writ ref.

As to this phase of the matter, we are not concerned with priority in time, or the time at which the amount was fixed. The assessment of the fee is in much the same category as the assessment of the stakeholder's costs of court. Although making no complaint as to court costs, appellant insists in argument that it is entitled to recovery, as a preference, of the entire fund, even as against court costs. In our opinion the trial court properly ordered the fee taxed against and paid from the fund. Wilke v. Finn, Tex.Com.App., 39 S.W.2d 836, 839; Parker Square State Bank v. Triangle Supply Co., Tex.Civ.App., 364 S.W. 2d 418, 424, writ ref. n. r. e. The attorney's fee awarded to the stakeholder for services in connection with the interpleader is to be accorded priority to the appellant's tax lien claim, and the latter was properly subordinated to it. However, the attorney's fee fixed by the trial court is for services both in the garnishment and in the interpleader proceedings, unsegregated as to the amount attributable to each. This portion of the judgment is severed, reversed and remanded for a new trial. Upon another trial the attorney's fees awarded should be fixed separately for services in each proceeding, and order of payment of the fee for services in the garnishment made inferior to appellant's lien claim.

### 2. Garnishment lien; Ray Thomas Gravel Co., Inc.

Ray Thomas Gravel Co. urges the notice of tax lien was not filed in the proper county. This appellee became a judgment creditor of the taxpayer in the amount of $1345.01 on January 5, 1961. 26 U.S. C.A. § 6323 makes the lien for taxes created by assessment invalid as against a judgment creditor until notice is filed in the of-

fice designated by the law of the state in which the property subject to lien is situated. Arts. 6644, 6645 and 5490, Vernon's Ann.Tex.Civ.St. designate the office of the Clerk of the County Court of "that county in which the property shall remain" or "be situated" as that in which the notice of federal liens shall be filed. The notice of tax lien was filed in Tarrant County, the principal place of business of the taxpayer, Seabreez Pools, Inc. No notice was filed in Johnson County, the residence of the debtor, Paden. No notice was filed in Hill County where the construction work was being done.

It is held that as to tangible, mobile personalty, which may be physically removed from place to place, the filing of the notice in the county of the taxpayer's domicile satisfies the requirement of the Texas statute. Grand Prairie State Bank v. United States, 5 Cir., 206 F.2d 217. The rule as to situs of a chose consisting of a claim for labor and material furnished, in determining where the property is situated under 26 U.S.C.A. § 6323, is settled in Citizens State Bank of Barstow, Texas v. Vidal, 10 Cir., 114 F.2d 380, 383. It was there held that such property was situated either at the domicile of the taxpayer or at the place where the work was performed. Intangible personal property is generally held to be "situated" under Art. 7153, V.A.T.S., and Texas Const., Art. 8, Sec. 11, Vernon's Ann.St., at the domicile of the owner, as at common law. Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 243 S.W. 778; Ferris v. Kimble, 75 Tex. 476, 12 S.W. 689.

In our opinion the notice of lien filed in Tarrant County, the domicile of the taxpayer who owned the chose which was then subject to the lien, made the lien valid under 26 U.S.C.A. § 6323 as to the judgment creditor.

The gravel company also says the debt owing by Paden to the taxpayer was contingent, and did not constitute

"property or rights to property" to which a lien could attach. 26 U.S.C.A. § 6321 provides a lien for taxes upon "all property and rights to property" belonging to the tax debtor. What constitutes such property or rights is governed by state law. Aquilino v. United States, 363 U.S. 509, 513, 517, 80 S.Ct. 1277, 1280, 1285, 4 L.Ed. 2d 1365, 1368, 1375. An intangible right to receive the contract price, though contingent on performance by the contractor, is a chose which constitutes property, or a right in property. Womack v. Womack, 141 Tex. 299, 172 S.W.2d 307, 308.

■ Appellee relies on In Re Halprin, 3 Cir., 280 F.2d 407. In that case it was held the contract was wholly executory, and the obligation to pay was qualified and contingent upon performance. If we follow Halprin, however, the court here found that on November 4, 1960 Paden was indebted to the taxpayer in the amount of $2286.07. This determination is unchallenged. The notice of lien in an amount exceeding this sum and in excess of the gravel company's claim was filed before November 4, 1960; and under the court's finding the lien attached to a debt which was then an unqualified obligation to pay as between Paden and the taxpayer.

The garnishment lien was subordinate to the federal tax lien. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Security Trust & Savings Bank of San Diego, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268.

This portion of the judgment is modified to make appellant's lien claim superior, in order of payment from the fund in the registry, to the claim of this appellee.

### 3. Assignment to Turner

■ On September 9, 1960 Seabreez Pools, Inc., assigned in writing to W. C. Turner $2335.34 of the amount to be paid under its contract with Paden. Paden had notice, and made written acceptance of the assignment. Prior to that assignment the federal tax lien had been assessed and notices had been filed in the sum of $3905.70. The Turner assignment was not recorded. The court found notices of levy of the federal tax lien were first served on Paden January 16, 1961, at which time the United States and its supervisory agent had actual notice of the prior assignment to Turner. Ray Thomas Gravel Company also had actual notice of the assignment before institution of garnishment proceedings. At the time the Turner assignment was made, approximately one-third of the construction work under the contract had been completed. It was one-half completed by December 31, 1960, and 98% completed by the end of May, 1961. The court found that at the time of the notice there were sufficient funds due from Paden to the taxpayer to pay both Turner and the amount of the tax lien then existing.

Appellant's reason for seeking reversal of this portion of the judgment is that the Turner assignment was not recorded as provided by Art. 260–1, V.A.T.S., and was not, therefore, a protected assignment. Its position is that its lien fixed priority both as to taxes assessed prior to the assignment and thereafter. We do not agree.

■ The enactment relied on does not provide, as do similar statutes in some other states, that such assignments shall be invalid against subsequent creditors, assignees or lienholders, unless the recording statute is complied with. Some such legislation in other states which does so provide, restricts the invalidity to subsequent creditors and assignees "without notice". See Parker Square State Bank v. Triangle Supply Co., Tex.Civ.App., 364 S.W.2d 418, 421, 423, writ ref. n. r. e. The Texas statute, Sec. 6, states the quality of constructive notice imparted by compliance with it: subsequent creditors and assignees shall be "conclusively" deemed to have received notice of the assignment from time of filing. This statutory method of affording protection to an

assignee is permissive. It is not exclusive. Its function and purpose is outlined by Justice Norvell in Scarborough v. Victoria Bank & Trust Co., Tex.Civ.App., 250 S.W. 2d 918, writ refused.

Prior to the enactment, recording of such an assignment was not authorized, and the record of it was held to give no notice of its existence. Burnham v. Chandler, 15 Tex. 441, 443. The Texas rule as to priority among assignments was stated in Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S.W. 621. In Clark v. Gillespie, 70 Tex. 513, 8 S.W. 121, it was held that an assignment by the contractor to a materialman of a portion of the amount owing by the owner under a construction contract, with notice to the owner, was valid "against all subsequent liens fixed upon the property" under existing mechanic's lien law; and the assignment had the effect of withdrawing the fund from the further control of the owner, and giving the assignee "not only a lien upon the fund, but a property in the fund itself." The distinction between the effect of a statute which imports notice by recordation, and actual notice of assignment to subsequent assignees of a judgment (under a statute which made recordation of a written transfer "full notice and valid and binding" on persons subsequently dealing with it) is illustrated in Smith v. Texas & P. Ry. Co., Tex.Civ.App., 39 S.W. 969, 972. It was said the statute did not affect validity of an assignment which did not comply with it, although such assignment would not be effective against a subsequent purchaser "without notice of the former assignment."

In no state or federal case cited by appellant, or which we have examined (in which it was held an assignment not in compliance with Art. 260–1 was ineffective as to subsequent creditors, assignees or lienholders) was there any actual notice to the subsequent creditor, assignee or lienholder of the prior assignment.

In our opinion, actual notice to appellant of the prior assignment to Turner was fully as effective to give Turner's assignment priority over the federal tax lien subsequently attaching as would have been the constructive notice provided by the statute. Although appellant's lien claim based on the amount of $3905.70 existing before the Turner assignment was made is obviously prior and superior to Turner's rights, it is inferior thereto as to the amounts of liens fixed after the assignment of which appellant had actual notice. This portion of the judgment is affirmed. Costs are taxed one-sixth against appellee, Ray Thomas Gravel Co., Inc., and five-sixths against appellant.