UNITED STATES of America, Plaintiff,

v.

Emanuel LESTER et al., Defendants.

United States District Court
S. D. New York.

July 20, 1964.

Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, for United States, Philip H. Schaeffer, David E. Montgomery, Asst. U. S. Attys., of counsel.

Collins & Gordon, New York City, for defendants, Emanuel Lester, Thomas H. Tracy, Frederic A. Collins and Frank H. Gordon, Frank H. Gordon, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

The United States, claiming deficiency income tax assessments of some $139,000 against one Odie R. Seagraves, sues under 26 U.S.C. § 7403 to enforce a federal lien for such taxes against a special account of the New York law firm of Collins & Gordon with the Lexington Avenue and 42nd Street Branch of the First National City Bank. On deposit in the special account is the sum of $125,000 which is the proceeds of the settlement of a lawsuit brought by Emanuel Lester against the estate of the late Serge Rubinstein in the Supreme Court, New York County. Messrs. Collins & Gordon represented the plaintiff Lester in this litigation.

Defendant Lester, on whose behalf this settlement was obtained, defendants Col-lins & Gordon, who assert that, out of the fund, they are entitled to be paid their fees for professional services in the Rubinstein litigation and for obtaining the settlement, and defendant Tracy, who asserts a claim for services as investigator in that litigation, have now moved for judgment on the pleadings pursuant to Rule 12(c), F.R.Civ.P., and for summary judgment pursuant to Rule 56.[1] The Government has made an oral cross-motion for summary judgment.

The first step in the long and tortuous chain of events which led to the institution of this action occurred in the period from 1942 to 1946 when Seagraves, a Texan, the taxpayer against whose property the tax here was levied, engaged in a joint venture with Rubinstein. Seagraves' interest in this joint venture eventually formed the basis for the suit in the New York State courts by Lester against Rubinstein which was subsequently settled for the $125,000 on deposit in the Collins & Gordon Special Account in the First National City Bank. It is the process by which this claim passed from the hands of Seagraves into the hands of Lester which has created the controversies involved in the case at bar.

The undisputed chronology of relevant events is as follows:

1. November 3, 1950: By a written instrument executed in Dallas, Texas, Seagraves assigned to Harold M. Oster, his attorney, and Donald U. Emmert, his accountant and office manager, his claims against Rubinstein arising out of the joint venture.

2. June 10, 1954: By a written instrument executed in Dallas, Texas, Oster and Emmert reassigned to Seagraves the claims against Rubinstein. In this instrument a lien of $25,000 "for unpaid consideration" was reserved by Oster and Emmert.

4. Also named as defendants are Seagraves, whose tax liability gave rise to the federal lien asserted here, his wife, Oster (through his executrix) and Emmert, who at one time were assignees of Seagraves' interest in such claims, Messrs. Atlas and Callahan, attorneys, who formerly represented Lester in the Rubinstein litigation, and the First National City Bank. These defendants have not joined in the present motions. The Bank takes the position that it is merely a stakeholder.

3. June 10, 1954: By a written instrument executed in the State of Texas, Seagraves assigned to Emanuel Lester the claims against Rubinstein. This assignment was absolute on its face and recited a consideration of "the sum of ten (10) dollars and other good and valuable considerations, including the release of certain debts receipt of which is hereby acknowledged."

4. June 17, 1954: By a written instrument executed in Dallas, Texas, Lester "acknowledged" that Seagraves had an option to require reassignment to him of the claims against Rubinstein if Lester had been "unable to effect collection" by September 15, 1954.

5. September 21, 1954: By a written instrument executed in Havana, Cuba, Seagraves and Lester "abrogated and declared null, void and of no effect" Seagraves' option for reassignment of the claims against Rubinstein referred to in the instrument of June 17, 1954. The Havana instrument contained a recital of consideration and the additional statement "that the aforesaid assignment from SEAGRAVES to LESTER [that of June 10, 1954] is in full force and effect and is absolute, unconditional and without restrictions of any kind, other than may appear in the body of said document." The instrument was acknowledged by Seagraves before a notary public in Hexar County, Texas, on September 30, 1954.

6. September 21, 1954: By a joint writing signed in Havana, Cuba, Seagraves and Lester stated that the consideration for the assignment of June 10, 1964 was the release of a pre-existing indebtedness and other valuable considerations including additional cash advances for oil and gas leases. The statement was acknowledged by Seagraves before a notary public in Bexar County, Texas, on September 30, 1954.

7. March 24, 1955: Oster and Emmert, then plaintiffs of record in an action in this court against Rubinstein based on the Seagraves joint venture claim, signed and acknowledged in Dallas, Texas, a letter to a New York attorney, to be filed in court. In this letter they reaffirmed their reassignment of the claims against Rubinstein to Seagraves before June 10, 1954, and disclaimed any interest in such claims. It appears that the action in this court was dismissed for want of jurisdiction.

8. April 15, 1955: The United States assessed a deficiency of $101,530.81 plus interest against Seagraves on his 1951 income tax.

9. October 7, 1955: The United States filed a notice of tax lien for this deficiency under 26 U.S.C. § 6323 in Dallas, Texas.

10. December 12, 1955: Lester instituted suit in the Supreme Court, New York County, to enforce claims against Rubinstein arising out of the joint venture with Seagraves.

11. October 1959: Collins and Gordon were substituted as attorneys for Lester in the Rubinstein suit and Lester executed a written agreement of retainer with them the terms of which do not appear.

12. August 5, 1963: Lester and Messrs. Collins & Gordon received $125,-000 from Rubinstein's estate in settlement of Lester's suit on the joint venture claims. This sum was deposited in a Special Account of Collins & Gordon with the First National City Bank.

13. August 5, 1963: The United States served a notice of levy on Lester, Collins & Gordon and the First National City Bank and thereafter commenced this action.

Collins & Gordon claim an attorney's lien on the fund for their services in the Rubinstein litigation and settlement. It is not clear from the papers submitted whether Tracy, an investigator apparently retained by Lester, asserts his claim to a portion of the fund by way of assignment or by way of lien. Lester, as the owner of the claims against Rubinstein, claims the balance of the fund after payment of Collins & Gordon and Tracy as well as the other defendant attorneys. All of the claimants contend that the Government has no tax lien

against the fund in question because the taxpayer Seagraves had no interest in that fund to which the lien could attach. In the alternative, they urge that even if the Government's lien has attached, Lester's ownership of the fund is prior in right to that lien and that Collins & Gordon and Tracy, who claim through Lester, are entitled to shelter behind his priority. Finally, Messrs. Collins & Gordon claim that even if the Government's tax lien is prior to Lester's ownership of or interest in the fund, their attorney's lien is prior to the Government's lien under federal common law.

The Government, on the other hand, contends that the assignment to Lester is wholly void under Texas law because it was not recorded, and under New York law because Seagraves was insolvent at the time, and that Seagraves therefore still owns or has an interest in the claims against Rubinstein and their proceeds. In the alternative, it claims that the assignment was for collection only. Finally, the Government claims that even if the assignment is valid between the parties, its lien is prior both to Lester's interest in the fund and to Collins & Gordon's attorney's lien because they were inchoate both at the time that the Government lien arose and at the time it was filed.[2]

Neither plaintiff nor defendants are entitled to summary judgment on this record.

■ The Government's motion for such relief must fail for the simple reason that it has not established that the taxpayer Seagraves owned or had any interest in the Collins & Gordon account in the First National City Bank on which it seeks to enforce its tax lien. Under § 6321 of the Internal Revenue Code of 1954 (26 U.S.C. § 6321) a federal tax lien attaches only to "all property and rights to property, whether real or personal," belonging to the person liable to pay the tax. There are limitations to the same effect in 26 U.S.C. § 6331 authorizing levy and 26 U.S.C. § 7403 providing for an action to enforce the lien and to subject property to payment of tax.

■ It is of course elementary that the Government may not take one person's property to satisfy another person's tax obligations. Unless it is established that the taxpayer is the owner of or has some interest in the property on which levy is sought to be made, the Government cannot enforce its lien against such property and the statutes relating to the lien and its enforcement so provide. In such case there is nothing to which the lien can attach.

■ Moreover that question is not determined by ascertaining what rights creditors of the taxpayer may have against the property under state law, as the Government seems to conceive here. In seeking to enforce its lien the Government is bound by the limitations of the statute. It can only reach property in which the taxpayer has an interest and its rights can rise no higher than his. City of New York v. United States, 283 F.2d 829 (2 Cir. 1960); Central Surety & Insurance Corp. v. Martin Infante Co., 272 F.2d 231 (3 Cir. 1959); United States v. Burgo, 175 F.2d 196 (3 Cir. 1949); Transmix Concrete of Rockdale v. United States, 142 F.Supp. 306 (W.D. Tex.1956).

■ Whether or not the taxpayer has any interest in property on which levy is sought to be made, however, is determined by state rather than federal law.

2. In paragraph 20 of its second amended complaint the Government alleges that Seagraves "is not, and has not been since 1951, in possession of or entitled to sufficient property to pay all of his debts." Other than the testimony in Seagraves' deposition that he owed a large sum of money in 1954, and the fact that he still owes the Government money, there is no evidence by way of affidavit, deposition or answers to interrogatories that Seagraves is presently insolvent as required in order for the Government to invoke the stringent provisions of the federal priority-in-insolvency statute, 31 U.S.C. § 191, and the Government does not seek to do so on this motion.

Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); Fidelity & Deposit Co. of Maryland v. New York City Housing Authority, 241 F.2d 142 (2 Cir. 1957). On the record as made thus far it appears that the assignment from the taxpayer Seagraves to Lester was made prior to the time when the Government's tax lien became effective. On its face the assignment was absolute and divested Seagraves of any rights whatsoever to the claims against Rubinstein which resulted in the Collins & Gordon deposit and passed to Lester the sole ownership of that claim.

The question here then is whether under applicable state law the taxpayer Seagraves had any interest in the Rubinstein claim after its assignment to Lester to which the tax lien against Seagraves could attach. In other words, was the assignment effective to divest Seagraves of all interest in the claim and to vest all interest in Lester?

(1)

The Government first asserts that Texas law governs because the assignment was made there and Seagraves resided there. It is its contention that under Art. 260-1 of the Texas Revised Civil Statutes, Vernon's Ann.Civ.St., the assignment was invalid and ineffective as between Seagraves and Lester because it was not recorded under that statute. Assuming that Texas law on the question does govern, the Government's contention is not well taken.

Art. 260-1 deals with the assignment of accounts receivable as defined in § 1 and provides in § 2:

"The assignment of any existing or future account or accounts may be protected by the execution and delivery by the assignor to the assignee of an instrument or instruments in writing * * * and by the filing for record the 'Notice of Assignment' as hereinafter provided for."

I will pass by the somewhat doubtful question of whether the assignment of a chose in action of the nature involved here comes within the statute at all. But if Art. 260-1 does apply, at least at the time the assignment from Seagraves to Lester took place, the assignment was not invalidated as between assignor and assignee, or rendered ineffective to pass full ownership from one to the other even if, as appears here, notice was not filed under the statute.

Art. 260-1 was apparently enacted to provide a means for assuring the validity in insolvency proceedings, and particularly proceedings in bankruptcy, of non-notification assignments of accounts receivable. Sutherland & Braucher, "Trust Receipts in Texas," 14 S.W.L.J. 328, 333 (1960); Williams, "Security Interests in Goods, Fixtures and Equipment of Merchants and Manufacturers," 25 Texas L. Rev. 589, 606–07 (1947); see Ruud, "A Legislative Audit of Judicial Opinions— A Proposal," 32 Texas L.Rev. 539, 544 n. 15 (1954).

It should be noted that the statute in its terms is permissive and not mandatory. § 2 provides that an assignment covered "may be protected" by filing a notice of assignment, not that a notice is required to be filed or that it is invalid or ineffective as between assignor and assignee if a notice is not filed. There is nothing either in the language of the section or the legislative background of the statute to indicate any legislative intent to upset transactions between assignor and assignee when an assignment is absolute, as it appears to be here.

This is emphasized by the provisions of the 1957 amendment to the statute which was passed on an emergency basis, apparently to deal with specific situations involving construction contracts. The amendment added the following language to § 1 of the statute which defines accounts receivable:

" 'account' or 'account receivable' shall not include any sums of money

accruing to a contractor for labor performed or material furnished on any public or private construction contract unless the assignment properly describes the land upon which the improvements are to be constructed and such assignment filed in the office of the County Clerk of the county wherein the land lies; which assignment shall not be effective prior to such filing. \* \* \* "

The use of the language "which assignment shall not be effective prior to such filing", apparently meant to relate only to the construction contract accounts receivable dealt with by the amendment, is a further indication that the statute as it was in effect when this assignment was executed and the tax lien became effective, did not render other accounts receivable invalid or ineffective as between assignor and assignee for failure to comply with the permissive language of § 2. Moreover, the preamble to the amending statute stated that its purpose was merely "to change the definition of 'account' or 'account receivable' by deleting provisions excluding sums accruing to a contractor who has furnished a surety bond." 1957 Acts, 55th Reg.Sess. ch. 348, May 31, 1957. Plainly the amendment was intended not only to be limited to construction contract accounts receivable but was not intended to and could not have had any retroactive effect on other accounts receivable.

Even under the present version of Art. 260–1, a Texas court has recently indicated that the recording of an assignment of the proceeds of a construction contract is not mandatory. United States v. Ray Thomas Gravel Co., 373 S.W.2d 333 (Tex.Civ.App. Waco, 1963), aff'd 380 S.W.2d 576 (1964). Under other Texas recording statutes failure to record an instrument does affect its validity as between the original parties. See Lichtenstein v. F. & M. Nat'l Bank, 372 S.W.2d 716 (Tex.Civ.App. Dallas, 1963); Cowden v. Bell, 293 S.W.2d 611 (Tex.Civ.App. San Antonio, 1956), aff'd 157 Tex. 44, 300 S.W.2d 286 (1957); Steed v. Crossland, 252 S.W.2d 784 (Tex.

Civ.App. Beaumont, 1952); Mitchell, Cartner & Thompson v. Young, 135 S.W. 2d 308 (Tex.Civ.App. Fort Worth, 1940).

I see nothing in the language or the background of Art. 260–1 as it stood in 1954 and 1955 which would invalidate assignments of accounts receivable as between assignor and assignee or retain in the assignor any interest in a claim assigned absolutely to an assignee merely because a notice was not filed. See R. F. Ball Constr. Co. v. Jacobs, 140 F.Supp. 60 (W.D.Tex. 1956), aff'd per curiam, 239 F.2d 384 (5 Cir.), rev'd per curiam on other grounds, 355 U.S. 587, 588, 78 S. Ct. 442, 2 L.Ed.2d 510 (1958) (Whittaker, J., dissenting); Comment, 30 Tex. L.Rev. 233, 238 (1951); cf. Quinn v. Dupree, 157 Tex. 441, 303 S.W.2d 769 (1957) (per curiam) (semble); Asch v. First Nat'l Bank, 304 S.W.2d 179 (Tex. Civ.App. Dallas, 1957) (semble).

██ None of the cases relied upon by the Government deal with the validity as between assignor and assignee of an unfiled assignment absolute in its terms at the time when the Seagraves-Lester assignment here was made. Lawrence v. Delta Metals, Inc., 280 F.2d 86 (5 Cir. 1960) and Republic National Bank of Dallas v. Vial, 232 F.2d 785 (5 Cir. 1956) both dealt only with the rights of creditors of the assignor under the Bankruptcy Act. In the Lawrence case the court assumed that the trial court had been correct in holding the assignment valid as between the parties. As has been pointed out, creditors' rights and remedies against a taxpayer do not necessarily determine the question of whether the taxpayer has a right or interest in property to which a federal tax lien may attach. The Government's tax lien rights derive from and are limited by the federal statutes which create them. They are not dependent on what rights the Government as a creditor may be able to avail itself of under state statutes.

In United States v. Phillips, 198 F.2d 634 (5 Cir. 1952), the federal tax lien had been filed before the assignment was executed and the validity of the assignment as between assignor and assignee

122

was thus not even in issue. Uhlhorn v. Owens, 211 F.Supp. 798 (S.D.Tex.1962), aff'd per curiam, Security State Bank of Pharr, Texas v. Uhlhorn, 325 F.2d 92 (5 Cir. 1963); South Maine State Bank v. State, 365 S.W.2d 946 (Tex.Civ.App. Austin, 1963), and Parker Square State Bank v. Triangle Supply Co., 364 S.W.2d 418 (Tex.Civ.App. Eastland, 1963), all dealing with situations arising subsequent to the 1957 amendment, concern assignments for security only. In each of these cases it was clear that the taxpayer still had an interest in the underlying property at the time the federal tax lien became effective regardless of the validity of the assignment.

█ Thus, assuming Texas law to be applicable, Art. 260-1 does not invalidate an unfiled assignment or render it ineffective as between the assignor and assignee. Seagraves, the taxpayer assignor, retained no right or interest in the Rubinstein claim to which the subsequently filed Government tax lien could attach.

(2)

In the alternative the Government contends that in the event that New York rather than Texas law applies, §§ 273 and 278 of the New York Debtor and Creditor Law, McKinney's Consol.Laws, c. 12 might render the assignment ineffective as between Seagraves and Lester were it able to establish the requisite insolvency of Seagraves and knowledge of insolvency by Lester at the time the assignment was made. To date the Government has not done so and thus this contention does not bear on its right to summary judgment.

█ But quite apart from this, §§ 273 and 278 merely provide for creditors' remedies by way of specific procedure under the terms of those sections. This is a procedure which the Government, as a creditor, might avail itself of in an action to set aside a fraudulent conveyance were it able to establish the requisites. But the sections do not affect or purport to affect the validity of the assignment as

between the original parties so as to retain in the taxpayer Seagraves any right or interest in the assigned property to which the tax lien could attach. Cf. T. G. W. Realties, Inc. v. Long Island Bird Store, Inc., 151 Misc. 918, 272 N.Y.S. 602 (1934). Again the Government has confused creditors' remedies under state statutes enacted for their benefit with property rights as between the assignor and assignee on which the Government's tax lien must depend.

(3)

In opposition to the defendants' motions for summary judgment the Government also contends that even if the assignment is not invalidated as between Seagraves and Lester by either Texas or New York law, Seagraves still has an interest in the proceeds of the claim against Rubinstein because the assignment to Lester was for collection only. There are statements in Seagraves' deposition which lend some support to this contention. If such parol statements are admissible to vary the terms of an instrument absolute on its face, then there is a triable issue of material fact as to whether the assignment by Seagraves was absolute or merely created an agency relationship between him and Lester.

█ While there do not appear to be any decisions in either New York or Texas passing directly on the question of whether under the parol evidence rule such statements are admissible to show an agency relationship instead of an outright conveyance, both states follow the general rule that parol evidence may be introduced to show that a conveyance absolute on its face was intended as security only. Warren v. Chemical Bank & Trust Co., 274 App.Div. 785, 79 N.Y.S. 2d 776 (1st Dept. 1948) (per curiam); Bradshaw v. McDonald, 147 Tex. 455, 216 S.W.2d 972 (1949). There is no reason to suppose that both states would not follow the prevailing rule that "an assignment absolute in form can be shown to have been for collection only." 4 Corbin, Contracts, § 882, at p. 545 (1951).

Since defendants' motions for judgment on the pleadings and for summary judgment are both predicated on the theory that Seagraves has no interest in the fund to which the federal tax lien has allegedly attached and there is a triable issue on this question, both must be denied.

(4)

The moving defendants also contend that even if Seagraves does have an interest in the fund, Lester is a "purchaser" entitled to protection against the tax lien under § 6323 of the Internal Revenue Code, 26 U.S.C. § 6323. That section provides that a federal tax lien "shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed." If the assignment to Lester was for collection only he could not be purchaser of the whole fund. Thus this issue of fact must in any event be tried whether or not § 6323 applies. Moreover, there is also the question of whether the assignment to Lester was inchoate at the time of the filing of the federal tax lien and whether the standards of choateness are applicable to outright purchasers. It would be premature to decide such questions in the present state of the record.

(5)

Finally, Messrs. Collins & Gordon alone contend that even if Lester's interest in the fund is subordinate to that of the Government their attorney's lien is entitled to priority in its own right. The short answer to this contention is that their attorney's lien could not have come into being until, at the very. earliest, December 12, 1955, when suit was instituted on the Rubinstein claim in the New York courts. See New York Judiciary Law, McKinney's Consol.Laws, c. 30, § 475. This was more than two months after the United States had filed its notice of tax lien. Not only did Collins & Gordon not have a choate attorney's lien at that time, they then had no lien whatsoever. Their interest is entirely dependent on that of Lester. See also United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950); United States v. Pioneer American Insurance Co., 374 U. S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). They are not entitled to judgment on the pleadings or summary judgment on this ground either.

Pursuant to Rule 56(d), F.R.Civ.P., I specify the material facts existing without substantial controversy to be those stated in the paragraphs numbered 1 to 13 at pp. 2–5 of this opinion. The only material facts which are actually and in good faith controverted are whether the assignment to Lester was for collection only and, if so, whether Seagraves was insolvent at the time of the assignment.

Defendants' motions for judgment on the pleadings and summary judgment and plaintiff's motion for summary judgment are in all respects denied.

It is so ordered.