## SECOND NAT. BANK OF HOUSTON v. PHILLIPS.

### No. 13297.

United States Court of Appeals Fifth Circuit.

May 22, 1951.

Rehearing Denied June 28, 1951.

Thad Grundy, Houston, Tex., for appellant.

Paul Strong, Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

The controversy which resulted in this appeal began with the filing by the bank, the appellant here, of its intervention, claiming a valid lien upon accounts receivable which had been assigned as security for a continuing line of credit it had furnished the bankrupt.

There followed: an answer and counter claim of the trustee, assailing the assignments as invalid, and alleging, in the alternative, that petitioner had two securities and should be required to marshal and first exhaust its real estate mortgage; the introduction of documentary evidence and the extended and undisputed testimony of two witnesses for the bank, with none for the trustee; findings and an order of the referee holding the claimed liens invalid under Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991, and In re O'Neal Furniture Co., D.C., 3 F.Supp. 108,[1] and, in the alternative, that there should be a marshaling; and a judgment of the district court affirming that order.

Conceding for the purpose of this appeal, the correctness, for their own facts, of the decisions the referee cites and relies on, but insisting that not these cases, but Coppard v. Martin, 5 Cir., 15 F.2d 743 and Lindsay v. Rickenbacker, 5 Cir., 116 F.2d 29, decisions of this court, are controlling here, appellant points to the undisputed facts completely differentiating this case from those the referee relies on.

These are that, unlike in those cases, (1) the assignment here was *not a secret,* but an open one, carefully noted not only on the books and records of assignor and assignee, but, in compliance with Art. 260-1, Vernon's Annotated Civil Statutes, on the public records as well; and (2) the assignor here was not left in unfettered possession of the assigned accounts to do with them and their proceeds as he pleased, but, on the contrary, his possession was limited and circumscribed by agreement requiring, among other things, that he either remit the proceeds of any accounts collected by him or substitute other accounts therefor.

Agreeing with appellant, as we do, that the facts of this case are so entirely different from those in the Ratner case as to make inapposite its citation in support of the judgment below, we find it unnecessary to pursue with appellant his inquiry whether it is authoritative, except for its precise facts and in the precise state, New York, where it arose.

It is sufficient for us to note that, as so often happens when a case attracting wide notice comes down, the decision in Ratner's case, at first hailed as a fundamentally new discovery and almost treated as a statute, operated for a while to set up, especially in the decisions of the inferior federal courts as a whole, a stream of tendency which, carrying its authority far beyond the boundaries its facts and its holdings, as applied to those facts, had set for it, tended to distort its meaning and effect, and to overmagnify its influence.

As inquiry, however, succeeded inertia and reflection mere parroting, the tide commenced to turn, and it was seen, as it was, not as a fundamentally new and magical discovery setting up an entirely new and comprehensive program of general principles for dealing with the assignment of accounts, but as a decision upon a specific set of facts, each fact being given its proper weight and place. So seen, the result was that it not only lost its accelerating forward momentum as a general regulator of business dealings, but, what with the decisions disapproving and statutes enacted to prevent its unwarranted extension,

---

1. Affirmed City National Bank of Beaumont v. Zorn, 5 Cir., 68 F.2d 566.

it found itself having a hard time holding its own in its narrow sphere.[2]

Fortunately in this circuit the Ratner case has never been a fetish. Understanding and recognizing it for what it is, a case attaching certain consequences, to a certain set of facts, taken as a whole and not as to each individual member of that set of facts, this court, in Coppard v. Martin, City National Bank v. Zorn, and Lindsay v. Rickenbacker, supra, has clearly seen and as clearly pointed out the controlling facts in Ratner's case and the precise determination made there. Seeing and pointing them out, it has kept within reasonable bounds the influence of that case upon the law in this circuit.[3]

Under those decisions and under Ratner's case, as understood and applied in them, the arrangement entered into here by the bank was valid, entirely independent of the Texas statute.

In addition, we are in no doubt that under the Texas Statute 260-1, with which appellant was in complete compliance, the assignments were completely valid and the judgment holding that they were not must be reversed.

This statute, enacted in 1945 as a part of the general wave of opposition throughout the states to the unduly restrictive effect, on the extension of business credit of the unauthorized extensions, of the Ratner decision, has not yet been construed by the Texas courts.

Its purpose, however, is clear, its language plain and unambiguous. It should, we think, be accorded the meaning it carries on its face. The referee and the district judge, in denying its application, put their denial entirely on the ground that the arrangement, as to the indebtedness for the assignment of accounts made in 1948, was a wholly new and different arrangement

---

2. Cf. Collier on Bankruptcy, 14th Ed., Se. 70.77, Doctrine of Benedict v. Ratner, Accounts Receivable, p. 1388, particularly at pp. 1395 and 1396.

3. In the Coppard case, where the lien was sustained, the court stated:

"The pledge of accounts receivable of a mercantile business creates a lien, though such accounts be retained and collected by the pledgor, and substitutions of future accounts be authorized. * * *

"However, if the pledgor is not required to make substitutions, but is authorized to use the proceeds of accounts as he sees fit, no lien exists. Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991 * * *.

"Martin's lien was not lost by reason of his failure to reimburse himself out of the first moneys received from the sale of goods. The acquiescence of the corporation that he reimburse himself out of later receipts amounted to a substitution, and did not result in any injury to the general creditors represented by the trustee. * * *" [15 F.2d 745.]

In the Zorn case, where the lien was denied, the court, speaking through the same judge, Bryan, with Hutcheson and Walker on the court, said: "It thus appears that the bank itself made no collections upon the secured accounts, but redelivered them to the furniture company, and that the latter was permitted to make the collections, to apply the proceeds as it saw fit, and was not required by the bank to replace the accounts which had been collected by other accounts or other collateral security. Under these circumstances, the assignment and pledge by the furniture company to the bank became, as to other creditors, fraudulent in law and void. Benedict v. Ratner, 268 U. S. 353, 45 S.Ct. 566, 69 L.Ed. 991; Coppard v. Martin, 5 Cir., 15 F.2d 743." [68 F.2d 566.]

Finally, in Lindsay's case, where the lien was sustained, the court, Foster, Sibley and Hutcheson, judges, stated: "The case was tried and the witnesses heard by the referee, who made findings of fact, substantially as above stated, and also found that no withdrawals from the special account were made until accounts of substantially the same amounts were assigned to Rickenbacker and that no effort was made to keep the assignments secret and the bankrupt's creditors and the mercantile agencies had notice thereof."

It then went on to say: "On the question of preference appellant relies principally upon Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991. In Coppard v. Martin, 5 Cir., 15 F.2d 743, we had occasion to consider the Ratner case and other authorities and reached the conclusion that, under a practically similar state of facts as shown in this case, the lien was valid and should be recognized. We adhere to that decision." [116 F.2d 30.]

from the one referred to in the assignment notice filed by the bank in 1946, and that, for that reason, and that reason alone, the 1946 filing was ineffective.

We cannot agree with this view. The undisputed evidence shows: that, since 1944, the bank had been furnishing a line of credit designed to enable the merchant to continue his business, with the least inconvenience to him, compatible with the bank's safety and security; and that, in 1946, after the enactment of the statute, the bank filed its notice in compliance with the statute, and in it specifically set out that the notice and arrangement were to be effective for three years thereafter.

■ The view of referee and court in effect, as it seems to us, that it was the duty of the bank to file a new notice, under the statute, every time it changed the form of the loan, is not, in our opinion, correct. The statute does not require a statement of the contents of the assigned accounts or of the contract under which they are assigned, but merely of the existence of the arrangement for assigning them. Its purpose is, by giving the name and address of the borrower as well as of the lender: to give notice to all persons dealing with it of the fact that the debtor had assigned, or intended to assign, accounts; and to afford persons dealing, or intending to deal, with the borrower, adequate opportunity to find out the facts as to his situation.

■ The assignments were valid, both because the arrangement for them was wholly devoid of the vices of secrecy and of the surrender of unfettered possession, condemned by Ratner, and because there was full compliance with the Texas statute. The judgment denying validity to the assignments was, therefore, wrong and must be reversed.

■ We are of the further opinion, however, that the referee and the district judge were right in their alternative finding that, under the doctrine of marshaling, the appellant, as the holder of two liens, ought to be required to first resort, for the satisfaction of its debt, to the real estate mort-

gage before resorting to the assigned accounts or their proceeds.

The judgment is, therefore, reversed and the cause is remanded with directions to allow appellant's claim as secured by assignments of accounts receivable, but also to frame the decree so as to require appellant, before resorting to the accounts and their proceeds, to first exhaust its real estate mortgage security.

Reversed and remanded with directions.