The UNIVERSITY STATE BANK et al.,
Appellants,

v.

GIFFORD–HILL CONCRETE CORPO-
RATION et al., Appellees.

No. 16917.

Court of Civil Appeals of Texas.

Fort Worth.

July 5, 1968.

Rehearing Denied Sept. 13, 1968.

Cantey, Hanger, Gooch, Cravens & Scarborough, and Charles L. Stephens,

Fort Worth, for appellant University State Bank.

Cook & Hobbs and Paul C. Cook, Fort Worth, for appellants G. A. Mallick, Inc., G. A. Mallick, Jr., St. Francis Village, Inc., Aetna Casualty & Surety Co., and Morris R. Antweil.

Mack & Mack, and Theodore Mack, Fort Worth, for appellant, Henry W. Simon, Jr., Trustee.

Carl A. Skibell, Dallas, for appellee, Dallas Rebar, Inc.

Touchstone, Bernays & Johnston, and Charles Beresford, Dallas, for appellee Gifford-Hill Concrete Corp.

OPINION

LANGDON, Justice.

This suit is primarily one to determine priorities to certain funds which were tendered into court. Gifford-Hill Concrete Corporation and Dallas Rebar, Inc., hereinafter referred to as G. H. and Rebar, respectively, unpaid materialmen, filed separate suits against the owner, St. Francis Village, Inc., the general contractor, G. A. Mallick, Inc., Geo. A. Mallick, Jr., and Morris R. Antweil, hereinafter referred to as the Mallick group, and the surety on the general contractor's bond which suits were consolidated. The defendants, by way of answer in the consolidated suit, filed a Bill of Interpleader bringing into the case The University State Bank, the Trustee in Bankruptcy of L. C. Springer, L. C. Springer, individually and the United States of America (it was dismissed upon failing to press its tax claim). The Trustee in Bankruptcy by a third party complaint brought in certain other parties.

The judgment of the court describes the parties and their relative positions in the following manner: G. H. and Rebar were plaintiffs, cross-defendants and defendants in interpleader, and G. A. Mallick, Jr., individually, G. A. Mallick, Inc., The Aetna Casualty & Surety Company, hereinafter referred to as Aetna, and Morris R. Antweil, individually, were defendants and petitioners in interpleader, and Lathern Clyde Springer, Henry W. Simon, Jr., Trustee (referred to as Trustee) in Bankruptcy of Lathern Clyde Springer, Bankrupt, and The University State Bank were defendants in interpleader and cross-plaintiffs, and the United States of America, defendants in interpleader. The case was tried to a jury.

The Court disregarding certain issues entered judgment for G. H. and Rebar against St. Francis Village, Inc., G. A. Mallick, Inc., G. A. Mallick, Jr., individually, and The Aetna Casualty & Surety Company, jointly and severally, as follows: To G. H. $31,337.56 plus $4,402.70 interest and $6,250.00 attorney's fees, a total of $41,990.26; to Rebar $16,530.28 plus $2,479.54 interest and $4,000.00 attorney's fees, a total of $23,009.82. Interest at 6% from date of judgment was awarded each. The total sum of $41,990.26 awarded G. H. and $9,261.94 of the $23,009.82 awarded Rebar plus $1,390.00 interest and $2,750.00 attorney's fees, a total of $13,401.94 was ordered satisfied out of the funds in the registry of the court. Both G. H. and Rebar were given judgment establishing and fixing their materialmen liens in the amounts of $41,990.26 and $23,009.82, respectively, against the property of St. Francis Village, Inc., said liens to be foreclosed and said property (therein described) sold by the Sheriff of Tarrant County, Texas, and the proceeds of said sale applied to the satisfaction of the total claims, including attorney's fees and interest. Rebar was further granted an unsecured claim in Bankruptcy in the matter of Lathern Clyde Springer, Bankrupt, for so much of its total judgment which is not finally satisfied out of the funds on deposit or from the foreclosure of its lien and judgment as against St. Francis Village, Inc., the Mallick group and Aetna.

The Trustee was awarded judgment against the Mallick group, St. Francis Village, Inc., and Aetna, jointly and severally,

for $7,060.49 and for the remaining balance of the funds on deposit after the satisfaction of the judgments awarded G. H. and Rebar and for $3,500.00 attorney's fees, to be paid out of the remaining balance of the funds on deposit.

Relief sought by The University State Bank and other parties was denied.

All parties except G. H. and Rebar have appealed.

The appellants, the Mallick group, St. Francis Village and Aetna, contend that the court erred: (a) in awarding any attorney's fees or interest to Rebar, and to G. H. and holding same were a lien against the funds on deposit in the registry of the court and the property of St. Francis Village, Inc.; in awarding the Trustee any attorney's fees and holding same were a lien on the funds in the registry of the court; (b) in awarding Rebar a lien against St. Francis Village, Inc. for any amount in excess of $9,261.94 (Points 1 thru 15); (c) in holding the Mallick group, Aetna, and St. Francis Village, Inc., liable to Rebar, G. H. and the Trustee for any part of their claims and in granting foreclosure of any lien against the property of St. Francis Village, Inc.; in refusing to discharge any lien claims against St. Francis Village, Inc. and to quiet the title thereto; in awarding Henry W. Simon, Jr., a personal judgment against the Mallick group, St. Francis Village, Inc., and Aetna, for the $7,060.49 balance of the L. C. Springer sub-contract; in failing to grant to these same parties subrogation of the L. C. Springer bankruptcy for any amount paid by any of said parties to Rebar or G. H. (Points 16 thru 32); and in refusing to award G. A. Mallick, Inc. interpleader attorney's fees for work done by its attorneys exclusive of the work connected with the contest over backcharges and the claim of the Trustee for additional compensation (Point 33).

The appellant, The University State Bank, insists the court erred in the following particulars: (a) in failing to render judgment on the verdict or to grant its motion for directed verdict in the amount of its claim, to be paid ahead of all other claimants out of the impleaded funds (Points 1 & 2); (b) in failing to render judgment for it against G. A. Mallick, Inc., and/or G. A. Mallick, Jr., in an amount equal to the progress payments that should have been paid to Springer on or about October 10, 1964, and November 10, 1964; (c) in failing to render judgment for it and against G. A. Mallick, Inc., and/or G. A. Mallick, Jr., in the additional amount of $1,542.24 ($1,713.60 less 10% hold-back) representing progress payment for the supplemental agreement between general contractor and Springer covering the rectory foundation; (d) in disregarding the jury's answers to related Special Issues Nos. 5 and 5–a and in thereby failing to enter judgment that appellant G. A. Mallick, Inc., pay into court the sum of $2,484.00 found by the jury to be due Springer under the oral contract in question; (e) in failing to grant judgment against G. A. Mallick, Inc., in the additional amount of $422.60, which amount G. A. Mallick, Inc.'s president admitted was owed to Springer for repair to foundations resulting from hail damage covered by insurance; or, in the alternative, the trial court erred in not deducting such sum of $422.60 from the chargeback off-set otherwise allowable to G. A. Mallick, Inc., under the jury's verdict; (f) in rendering judgment that appellee Rebar was entitled to have a substantial portion of its claim and appellee G. H. its entire claim for material satisfied and paid out of the funds on deposit; (g) in holding that appellees G. H. and Rebar had a lien upon the interpleaded funds for interest and attorney's fees and that all costs be taxed against the interpleaded funds rather than taxing costs against appellants G. A. Mallick, Inc., and G. A. Mallick, Jr.; (h) in holding that the Trustee was entitled to have his attorney's fees paid out of the funds on deposit rather than be paid by appellants G. A. Mallick, Inc., and/or G. A. Mallick, Jr.; (i) in failing to submit in its charge to the jury

certain requested special issues and instructions; (j) in overruling its objections to certain "duplicitous and overlapping" issues in the charge and to evidence offered for impeachment purposes of certain exhibits, and its motion to strike from the record the exhibits and testimony relating thereto. (Points 3–22).

The appellant, Trustee, contends the court erred: (a) in granting the motions of the Mallick group and St. Francis Village, Inc., and Aetna to disregard the jury's answers to Special Issues Nos. 5, 5–a, 7, 7a, 7b, 7c, and in granting judgment notwithstanding the jury's answers to said issues; in ordering costs of suit paid out of the court funds (Points 1–3); (b) in failing to grant the Trustee judgment jointly and severally against G. A. Mallick, Inc. and George A. Mallick, Jr., as well as against the fund on deposit for his attorney's fees of $3,500.00; (c) in granting G. H. satisfaction of its judgment for $41,990.26 and $13,401.94 of Rebar's $23,009.82 judgment including interest and attorney's fees out of the fund on deposit in the registry of the court; (d) in failing to grant judgment that the entire $58,752.21 on deposit be paid to the Trustee for distribution in accordance with the Bankruptcy Act.

The following background is deemed pertinent to a discussion of the issues: On October 29, 1963, G. A. Mallick, Inc., George A. Mallick, Jr., individually, and Morris R. Antweil, individually, (the Mallick group) executed a general construction contract with St. Francis Village, Inc. for construction of extensive improvements on a large tract of land owned by St. Francis Village, Inc. in Tarrant County, Texas. The contract price was $3,413,748.00. On the same date, Mallick, Inc., Mallick, and Antweil (the Mallick group) executed a payment and performance bond in the amount of the contract price as principals with the Aetna Casualty & Surety Company as surety and with St. Francis Village, Inc. and Southwestern Life Insurance Company as obligees. On March 20, 1964, G. A. Mallick, Inc. and L. C. (Lathern Clyde) Springer, Cement Contractor, entered into a "subcontract" ($185,000.00) for certain cement work on the St. Francis Village project.

On April 6, 1964, Springer executed a contract with Rebar for the purchase and sale of the reinforcing steel to be used by Springer on the St. Francis Village project. Rebar made its first delivery to Springer at the construction site within one month of that date.

On April 16, 1964, Springer executed an assignment of contract proceeds to the University State Bank of Fort Worth. This assignment was filed with the County Clerk of Tarrant County, Texas, on May 7, 1964. The assignment read as follows, with emphasis supplied by us:

*"ASSIGNMENT OF PROCEEDS DUE ON CONSTRUCTION AGREEMENT*

"WHEREAS, *on the 20th day of March, 1964, G. A. MALLICK, INC., acting by duly authorized agent and officer, George A. Mallick, Jr., executed a Contract with L. C. SPRINGER, d/b/a L. C. SPRINGER CEMENT CONTRACTOR*, by which G. A. Mallick, Inc., agreed to pay certain sums of money to L. C. Springer *for performing the cement work on the housing project known as 'St. Francis Village' near Benbrook Lake, Tarrant County, Texas,* for the total sum of ONE HUNDRED EIGHTY-FIVE THOUSAND AND NO/100 ($185,000.00) DOLLARS, *all as set forth and specified in said contract, and whereas, L. C. Springer, for that amount of money, has agreed to perform all labor, to furnish all materials therefor in accordance with the plans and specifications set forth in said contract and the additional agreements attached thereto.*

"NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS: *That L. C. Springer*, in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS,

*and other good and valuable consideration to him cash in hand paid by The University State Bank, Fort Worth, Texas,* the receipt of which is hereby acknowledged, *do hereby assign, transfer, and convey all of its rights and proceeds due from said contract to the said The University State Bank, Fort Worth, Texas,* its successors and assigns, *together with all right, title and interest in and to said contract securing the payment thereof.*

"For the consideration hereinabove expressed, and for the purpose of better securing The University State Bank, Fort Worth, Texas, assignor hereby agrees and covenants with said Bank that assignor will complete all work in accordance with the plans and specifications. The University State Bank assumes absolutely no responsibility as contractor or any other liability whatsoever for the completion of the work to be done by L. C. Springer, d/b/a L. C. Springer Cement Contractor.

"EXECUTED this the 16th day of April, 1964.

                "/s/ L. C. Springer
                "L. C. Springer, d/b/a
                L. C. SPRINGER
                CEMENT CONTRACTOR"

A proper acknowledgment appeared at this point followed by: *"THIS ASSIGNMENT of the money proceeds due L. C. Springer, d/b/a L. C. Springer Cement Contractor, is this day expressly approved by the General Contractor, G. A. MALLICK, INC., in compliance with the Contract between G. A. Mallick, Inc., and L. C. Springer above mentioned.*

                "G. A. MALLICK, INC.

                "BY: /s/ G. A. Mallick
                        "President"

The assignment was filed on May 7, 1964.

Thereafter, on August 4, 1964, Springer entered into an agreement with G. H. for the purchase of concrete to be used by him in the St. Francis Village project.

On October 15, 1964, G. H. gave notice to G. A. Mallick, Inc., by certified mail that it had not been paid for materials sold to Springer after August 4, 1964. On October 16, 1964, Rebar gave notice to G. A. Mallick, Inc. and St. Francis Village, Inc. that it had not been paid for materials delivered to Springer at the St. Francis Village job site in June, July, August and September, 1964.

On November 30, 1964, Lathern Clyde Springer was adjudged bankrupt upon a voluntary petition in bankruptcy filed by him. Henry W. Simon, Jr. was subsequently appointed Trustee. (At this time Springer had substantially completed all work required by the subcontract.)

Springer went on the St. Francis Village job early in April, 1964, and remained on the job until mid-October. The first foundation was poured on April 27, 1964. G. A. Mallick, Inc., in a period June 19, 1964, through September 9, 1964, made payments to Springer which totaled $117,064.40. These payments were made on Springer's monthly estimates or draws. G. A. Mallick, Inc. refused to pay Springer the amounts shown to be due on estimates submitted by him on September 25, 1964, and in October, 1964. G. A. Mallick, Inc. was paid by the owner early in October for 90 percent of Springer's work through September 25, 1964, and by early in November for all the work that Springer had done on the job.

Between April 16, 1964, and the date of bankruptcy, Springer borrowed sums from The University State Bank totaling $123,625.37. He repaid prior to bankruptcy sums totaling $76,755.63. On the date of bankruptcy there was due The University State Bank a principal balance on eight promissory notes totaling $46,869.74.

On the date of bankruptcy Springer owed G. H. the sum of $31,337.56 which sum represented the price, including sales tax, of concrete sold to Springer for use on the St. Francis Village job between August 4, 1964, and October 9, 1964.

On the date of bankruptcy Springer owed Rebar the sum of $16,530.28. This sum represented the balance due for purchase price and sales tax of reinforcing steel furnished by Rebar to Springer on the St. Francis Village job during the months of June, July, August, and September, 1964.

On December 16, 1964, after bankruptcy, the Trustee received a check drawn on Rattikin Title Company in the amount of $16,782.43.

Thereafter, on April 14, 1965, the Trustee received and deposited a cashier's check No. 464637 remitted by Mallick to his account in the amount of $22,249.78. On November 19, 1965, the Trustee received and deposited a check drawn on the account of G. A. Mallick, Inc. to his account as Trustee in the amount of $19,720.00. On December 6, 1965, the Trustee issued Trustee's Warrant No. 9 payable to the District Clerk of Tarrant County in the amount of $58,752.21.

■ We hold that under the evidence the payments above enumerated which total $58,752.21 paid to the Trustee by Rattikin Title Company and others was money due Springer on his contract with the general contractor on the St. Francis Village project, the proceeds of which were assigned to the Bank.

■ Under the uncontested facts the materialmen, G. H. and Rebar are clearly entitled to judgment for the full amount of their claims plus interest, attorney's fees and pre-judgment interest.

The trial court therefore did not err in so holding and in giving G. H. and Rebar judgment therefor as against Aetna, and in granting to them a personal judgment against the owner, St. Francis Village, Inc., and ordering foreclosure of their liens against its property and in further granting personal judgment against G. A. Mallick, Inc. and G. A. Mallick, Jr.

Under the holdings of the Supreme Court in University Savings & Loan Ass'n v. Security Lumber Co., 423 S.W.2d 287 (Tex.Sup.Ct., 1967) and in General Air-Conditioning Co., Inc. v. Third Ward Church of Christ et al., 426 S.W.2d 541 (Sup.Ct., April 10, 1968) opinion B–558, the two materialmen are entitled to a recovery and a lien against the owner's property to the extent of the retainage it was required to withhold and did not.

■ The trial court's judgment provides that attorney's fees awarded to Rebar and to G. H. may be enforced by foreclosure of mechanic's liens against the property of the owner and grants the materialmen recovery of attorney's fees against Aetna. The fees are recoverable against Aetna under Sec. 6 of Art. 5472d, Vernon's Ann. Civ.St., but not against the owner and general contractor because their written contracts contain no provisions for attorney's fees. The judgment of the trial court should therefore be reformed and modified so as to preclude the recovery of attorney's fees against the owner and general contractor and allow recovery of such attorney's fees awarded against the surety, Aetna.

Having sustained the judgments awarded to G. H. and Rebar by the trial court except for modification as to the attorney's fees we are now confronted with the question of whether a portion or all of such judgments should be satisfied out of the funds on deposit in the registry of the court.

In order to answer this question it is essential to determine whether or not the assignment from Springer to the Bank was a "protected" assignment under Article 260–1, V.A.C.S.

All parties except the Bank contend that it was not a "protected" assignment because it failed to "properly" describe the land upon which the improvements were to be constructed. It is further argued that the notice of assignment which is actually

the assignment itself, filed of record by the bank, does not include any address for Springer, the assignor and makes no mention of any period of time for which such notice is to be effective.

We are of the opinion and hold that the assignment was "protected" and constituted constructive notice to Rebar and G. H. Both had a contract with Springer. They knew his occupation and how to locate him. Further, in order to deliver their products to him they had to know the location of the St. Francis Village project.

"* * * The statute does not require a statement of the contents of the assigned accounts or of the contract under which they are assigned, but merely of the existence of the arrangement for assigning them. Its purpose is, by giving the name and address of the borrower as well as of the lender: to give notice to all persons dealing with it of the fact that the debtor had assigned, or intended to assign, accounts; and to afford persons dealing, or intending to deal, with the borrower, adequate opportunity to find out the facts as to his situation." Second Nat. Bank of Houston v. Phillips, 189 F.2d 115, 118 (5th Cir., 1951).

Rebar and G. H. were afforded adequate opportunity to find out the facts from the information contained in the assignment.

The assignment imparted "fair notice." Tezel & Cotter v. Roark, 301 S.W.2d 179 (San Antonio Civ.App., 1957, error ref.). "The assignment to appellee is in substantial compliance with the provisions of Article 260–1 in the description as to the name, mailing address, residence, principal office of assignor and assignee, etc. The description of the land is sufficient in this instance where the assignment in part is: '* * * does hereby SELL, ASSIGN and TRANSFER to the said Texas Warrant Company the sum of Nine Thousand Seven Hundred Fifty and Sixty-one/100 ($9,750.61) Dollars, now due to said Jack Collins Construction Company, Inc., from the State of Texas for work performed on State Project No. 63–037, Inks Lake State Park, payable out of Fund No. 1, Appropriation No. 312288, * * *.'

"The assignment gives fair notice to the public." Transamerica Insurance Co. v. Texas Warrant Co., 405 S.W.2d 66 (Austin Civ.App., 1966, ref. n. r. e.).

Article 260–1, V.A.C.S., does not require a legal or metes and bounds description. The requirement is that the land be properly described. Section 2 of the Act requires that the account assigned be described with sufficient particularity to identify it. A proper description of land is one with sufficient particularity to identify it. The description, "St. Francis Village, near Benbrook Lake, Tarrant County, Texas," constitutes fair notice. It identifies the property with far more particularity than a metes and bounds description, a portion of which would read as follows: "a tract or parcel of land out of the Wm. Anglin Survey, abstract 6 * * * Beginning at a point in the East line of said Anglin Survey, 1475 vrs. North 0 degrees 34 minutes West * * * etc." Such a description would require a survey crew a considerable time and great expense to locate the beginning point. The description, St. Francis Village near Benbrook Lake, when considered with the other information contained in the notice of assignment such as the name and address of the Bank, the name L. C. Springer, d/b/a L. C. Springer Cement Contractor and the names of G. A Mallick, Inc., general contractor, and its president, G. A. Mallick, who expressly approved the assignment and the references to the contract and the additional agreements attached thereto, all of which was contained in the notice filed of record constituted substantial compliance with Art. 260–1, V.A.C.S. The assignment was dated. The contract would spell out the period of the assignment which did not exceed three years.

A single inquiry directed to the office of the general contractor, G. A. Mallick, the Bank or Springer, either by phone, letter

or in person would have readily provided any additional information relating to the assignment.

Subject to certain exceptions, it is a general rule that knowledge of or notice to an agent received while acting as such within the scope of his authority and in reference to a matter over which his authority extends is imputed to and binds his principal. 3 Am.Jur.2d, "Agency", § 273.

As previously noted, Springer, on April 6, 1964, executed a contract with Rebar for the reinforcing steel to be used on the St. Francis Village project and made its first delivery to Springer within one month of that date.

Rebar's Office Manager, Pruitt, became familiar with the St. Francis Village project in working with another contractor who submitted a bid on the entire project. This contractor did not get the job. When the Dodge report reflected that G. A. Mallick, Inc., was to be the general contractor on the project Pruitt contacted the President, G. A. Mallick, Jr., who invited a proposal from Rebar. Rebar obtained a set of plans. A factor for consideration in determining the amount of bid was transportation costs from nearest plant to the project. Before submitting a bid Rebar knew where the project was located. The bid reflected such knowledge. Rebar, on April 6, 1964, on entering into contract with Springer, had to know the location of the project for deliveries. Mallick called Pruitt early in April and advised the concrete work had been subbed out to Springer and furnished the latter's telephone number to Pruitt. Pruitt thereafter contacted Springer and met him at his (Springer's) home. The April 6, 1964, contract was signed there.

Pruitt testified that Rebar had furnished steel to another subcontractor on the project prior to the time Springer's contract was started.

Springer had used G. H.'s concrete on other jobs in the past and had established credit with it.

Miss Sue Boling, representative of G. H., came out to St. Francis Village to sell Springer the concrete. Lacking authority to grant a discount which was requested, G. H. sent its representative, Harrod, out to St. Francis Village. He offered the discount. G. H. was aware of Springer's financing arrangement with the Bank. Without question the two representatives of G. H. had personal knowledge of the exact location of the job site. Harrod had visited the job site several times and said, "It was the largest single job we had sold in a long time. We were very proud to get to service the job."

G. H. had a card on Springer containing his address. The invoices to Springer showed St. Francis Village as the "delivery point."

G. H. and Rebar are sophisticated materialmen. There was little, if anything, they did not know about St. Francis Village, the general contractor, Springer and the latter's banking arrangements. Any information they lacked actual knowledge of was within their reach on a moment's notice.

Actual notice includes knowledge of all facts that reasonable inquiry would have disclosed. The duty of inquiry extends only to those matters that are fairly suggested by the facts which are really known rather than circumstances which may merely arouse suspicion in the mind of a reasonably prudent person. 41 Tex.Jur.2d, pp. 524, 525. Sec. 6 of the same text reads: "Where one has knowledge of facts that would lead a reasonably prudent person to investigate, an incomplete investigation is not sufficient; one is still liable for all of the facts that he ought to have discovered." See also Sections 7 and 9 of the text: "§ 7. Constructive notice. Actual notice is rebuttable but constructive notice is a legal inference, conclusive in its nature, established from facts such as the notice imparted by the record of instruments. It does not rest on personal information or knowledge. * * *"

Though characterized as harsh in its nature, constructive notice is as effectual and binding as actual notice. The difference is that, whereas actual notice is usually a question of fact for the jury, constructive notice is a legal presumption not to be controverted.

Section 9 (same text) reads: "To a large extent, every case involving notice depends on its own facts, and there can be no general rule embracing all the circumstances that are sufficient to put a party on inquiry. Certain guiding principles have, however, been recognized by the courts.

"Thus the facts that are claimed to put one on inquiry must be of a character that would ordinarily excite investigation and lead to the discovery of the main fact by the exercise of proper diligence. There must also appear in the nature of the case such a connection between the known facts and the further facts to be discovered that the former may be said to furnish a reasonable and natural clue to the latter. * * *"

The language of Sec. (1) of the Act (260-1) to the effect that the assignment will not be effective prior to such filing can mean only that it will not be treated as a "protected" assignment and thus as constructive notice thereof until filed. The language does not mean that such an assignment is not valid unless it is filed.

In United States v. Ray Thomas Gravel Company, 373 S.W.2d 333 (Waco Civ.App., 1963), reversed on other grounds at 380 S.W.2d 576, it was said: "Appellant's reason for seeking reversal of this portion of the judgment is that the Turner assignment was not recorded as provided by Art. 260-1, V.A.T.S., and was not, therefore, a protected assignment. Its position is that its lien fixed priority both as to taxes assessed prior to the assignment and thereafter. We do not agree.

"The enactment relied on does not provide, as do similar statutes in some other states, that such assignments shall be invalid against subsequent creditors, assignees or lienholders, unless the recording statute is complied with. Some such legislation in other states which does so provide, restricts the invalidity to subsequent creditors and assignees 'without notice'. See Parker Square State Bank v. Triangle Supply Co., Tex.Civ.App., 364 S.W.2d 418, 421, 423, writ ref. n. r. e. The Texas statute, Sec. 6, states the quality of constructive notice imparted by compliance with it: subsequent creditors and assignees shall be 'conclusively' deemed to have received notice of the assignment from time of filing. This statutory method of affording protection to an assignee is permissive. It is not exclusive. Its function and purpose is outlined by Justice Norvell in Scarborough v. Victoria Bank & Trust Co., Tex.Civ.App., 250 S.W.2d 918, writ refused.

"Prior to the enactment, recording of such an assignment was not authorized, and the record of it was held to give no notice of its existence. Burnham v. Chandler, 15 Tex. 441, 443. The Texas rule as to priority among assignments was stated in Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S.W. 621. In Clark v. Gillespie, 70 Tex. 513, 8 S.W. 121, it was held that an assignment by the contractor to a materialman of a portion of the amount owing by the owner under a construction contract, with notice to the owner, was valid 'against all subsequent liens fixed upon the property' under existing mechanic's lien law; *and the assignment had the effect of withdrawing the fund from the further control of the owner, and giving the assignee 'not only a lien upon the fund, but a property in the fund itself.'* The distinction between the effect of a statute which imports notice by recordation, and actual notice of assignment to subsequent assignees of a judgment (under a statute which made recordation of a written transfer 'full notice and valid and binding' on persons subsequently dealing with it) is illustrated in Smith v. Texas & P. Ry. Co., Tex.Civ.App., 39 S.W. 969, 972.

It was said the statute did not affect validity of an assignment which did not comply with it, although such assignment would not be effective against a subsequent purchaser 'without notice of the former assignment.' (Emphasis added.)

"In no state or federal case cited by appellant, or which we have examined (in which it was held an assignment not in compliance with Art. 260–1 was ineffective as to subsequent creditors, assignees or lienholders) was there any actual notice to the subsequent creditor, assignee or lienholder of the prior assignment.

"In our opinion, actual notice to appellant of the prior assignment to Turner was fully as effective to give Turner's assignment priority over the federal tax lien subsequently attaching as would have been the constructive notice provided by the statute. Although appellant's lien claim based on the amount of $3905.70 existing before the Turner assignment was made is obviously prior and superior to Turner's rights, it is inferior thereto as to the amounts of liens fixed after the assignment of which appellant had actual notice."

Unquestionably the assignment is "protected" as against the assignor, Springer, G. A. Mallick, Inc. and G. A. Mallick, Jr., who approved it on behalf of the General Contractor. These parties and Trustee who stand in the shoes of Springer have no valid basis for complaint as to the assignment. They had actual knowledge.

For the reasons previously stated we are of the opinion that there was substantial compliance with Art. 260–1, V.A.C.S., by the Bank and the assignment was therefore protected as to both G. H. and Rebar and constituted constructive notice to each.

If we are in error in so holding we then hold that the filing of the assignment constituted actual notice thereof to G. H. and Rebar and that such notice included knowledge of all facts which reasonable inquiry would have disclosed. 41 Tex.Jur.2d, pages 524, 525. See also Champlin Oil & Refining Company v. Chastain, 403 S.W.2d 376 (Tex.Sup., 1965).

The court was in error in disregarding the jury findings to this effect and in failing to base its judgment on such findings.

In Parker Square State Bank v. Triangle Supply Co., 364 S.W.2d 418 (Eastland Civ.App., 1963, ref. n. r. e.): "The principal question presented is whether the lien creditors who acquired liens after delivery of valid written assignment of the accounts, acquired rights to the funds superior to that of the assignees because the assignees had not filed notice of their assignments.

* * * * * *

"We have held that the rights of subsequent lien creditors are superior to the rights of assignees who fail to protect their assignments by filing notice thereof."

In the case at bar the notice of assignment was filed. We are of the opinion that it was a "protected" assignment under the facts of this case and thus constituted constructive notice to Rebar and G. H., alternatively, the filed instrument constituted actual notice.

The judgment of the court in this connection should be reversed and reformed and the Bank's claim to a first priority granted as against all other claimants to the funds paid into court and to be paid into court.

The court erred in granting the motion of G. A. Mallick, Inc., G. A. Mallick, Jr., St. Francis Village, Inc., Morris R. Antweil, and the Aetna Casualty & Surety Company to disregard the jury's answers to Special Issues Nos. 5 and 5–a, and in granting judgment notwithstanding the jury's answers to said issues.

The jury found a subsequent oral modification of the contract of March 20, 1964, between Springer and Mallick, Inc. on facts as testified to by Springer. His

testimony was to the effect that early in April when it appeared that the air conditioning contractor was not properly prepouring concrete around the air conditioning plenums and boots that Mallick, Jr. requested him to order the concrete to be used on the prepours, and he would be paid for it. Springer testified that he ordered two extra yards of concrete at $11.75 per yard on 108 buildings, and that he had billed Mallick for this sum. It was not paid. The issues, as submitted, were not subject to "no evidence" or "insufficient evidence" objections.

Springer was not required to furnish this particular item under the contract of March 20.

Exhibit No. 32 reflects: "Subcontractor agrees to furnish all labor, materials, equipment and supervision for performance in a good and workmanlike manner of that portion of the Project shown on Drawings numbered R–2 through R–6 and in the Specifications numbered Section 6–1 through 6–8. * * *"

The specifications indicated contain no direction that the concrete contractor prepour the air conditioning plenums and boots. These particular facts were in controversy and the jury, as was its province, determined them in favor of the Trustee.

Another section of the specification not referred to in the Springer-Mallick contract says: "HEATING, VENTILATING AND AIR CONDITIONING * * * Work by Other Contractors: All concrete work will be done by the General Contractor. It will be the responsibility of the Air Conditioning Contractor to furnish him with the proper dimensions for embedded work prior to the pouring of the slab. *General Contractor to provide necessary pre-pour around plenum and register boxes.* * * *" (Emphasis supplied.)

It appears clear from such evidence that the Trustee supported his contention as to a subsequent oral agreement modifying the contract of March 20, 1964. This subsequent agreement was not subject to the Parol Evidence Rule. This Rule affects only prior or contemporaneous oral agreements which modify or change written agreements. 23 Tex.Jur.2d, Evidence, § 342, p. 500; Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W.2d 30 (1958). As early as 1866, the Supreme Court of Texas held that the Parol Evidence Rule has no reference to a subsequent modification of a written contract by oral agreement. Self v. King, 28 Tex. 552 (Sup.Ct., 1866). There Judge Smith said: "It is not doubted that, after the reduction of a contract to writing, the parties may change it by a verbal agreement, based upon a valuable consideration, in many respects. The date of performance may be postponed, etc. Such testimony does not contradict or vary the original agreement in the sense of the rule laid down. It admits the agreement to have been as stated in the writing, but that it was changed subsequently by valid agreement of the parties."

Proof was to the effect that subsequent to March 20, 1964, (during May, 1964) the date of the written contract, Springer and Mallick, Inc. agreed that Springer would be paid for furnishing the necessary concrete to prepour the air conditioning plenums. In consideration of Mallick, Inc.'s promise to pay, Springer procured concrete and prepoured around the plenums and boots. Thus, the jury answers to Special Issues 5 and 5–a establish a valid contract subsequent to the written agreement of March 20, 1964.

The trial court erred in granting the motion of G. A. Mallick, Inc., G. A. Mallick, Jr., St. Francis Village, Inc., Morris R. Antweil, and the Aetna Casualty & Surety Company to disregard the jury's answers to Special Issues Nos. 7, 7–a, 7–b, and 7–c, and in granting judgment notwithstanding the jury's answers to said issues.

The jury's answers to these issues established the Trustee's right to judgment against G. A. Mallick, Inc., et al., upon a quantum meruit for $6,302.40. The Trus-

tee's first amended original answer prayed for recovery both upon an express contract and upon quantum meruit.

The Statement of Facts contains ample testimony in support of these issues. The jury's answers to issues 7 through 7–c determined that while there was no agreement by Mallick or Mallick, Inc. to pay extra for the increased size of the patios, Springer, nevertheless, furnished labor and materials not required by the contract of March 20, 1964, and that the value of the labor and materials thus furnished was $6,302.40.

Again the issues were not subject to "no evidence," "insufficient evidence" or Parol Evidence Rule objections.

Quantum meruit, a creature of equity, arises independent of any contract. It is based on the theory that if a person performs work beneficial to another, and such benefit is accepted by the other, nonpayment for such benefit would unjustly enrich the party receiving the benefit by the value of the work done. Although the two theories of recovery are inconsistent, they may be plead alternatively under the provisions of Rules 47 and 48, Texas Rules of Civil Procedure, as the Trustee did in this case. In Clower v. Brookman, 325 S.W. 2d 440 (San Antonio Civ.App., 1959, no writ hist.) it was said: "Appellant complains that the trial court inconsistently concluded that plaintiffs could recover upon contract, and also upon quantum meruit. The trial court concluded that plaintiffs might win on either theory. It is true that an express contract and quantum meruit are distinct and different relationships. The ideas are inconsistent. Nystel v. Gully, Tex.Civ. App., 257 S.W. 286, 288. But it is also true that the same record may contain evidence which will support either theory. The plaintiffs pleaded alternatively both theories. 'It is no objection that the plaintiffs sought to recover both upon an express contract and upon quantum meruit. They might allege both, and recover as the evidence might show.' Fant v. Andrews, Tex.Civ.App., 46 S.W. 909, 910. While one may not allege the one and recover on the other; one may allege both and recover on either, if it is proved. * * *"

Since the Trustee pleaded both contract and quantum meruit and the jury, in response to Special Issue No. 4, found no contract, it was therefore proper for the jury to consider the quantum meruit issues.

The trial court's award of attorney's fees to Henry W. Simon, Jr., Trustee, in the amount of $3,500.00 was proper under Art. 2226, V.A.C.S. The court erred, however, in charging the award against the fund on deposit in the registry of the court. The Trustee is entitled to a personal judgment for the attorney's fees against G. A. Mallick, Inc. and Geo. A. Mallick, Jr., jointly and severally. J & M Construction Company v. White, 371 S.W. 2d 780 (Fort Worth Civ.App., 1963, writ ref. n. r. e.); Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75 (1958); Langdeau v. Bouknight, 162 Tex. 42, 344 S.W.2d 435 (1961).

In the case at bar, the debt which gave rise to the right to recover attorney's fees was created under the contract executed by G. A. Mallick as president of G. A. Mallick, Inc., on March 20, 1964. The contract was executed while the right to do business was forfeited for failure to pay franchise taxes for the period July 16, 1963 through May, 1964. It is to be noted that the right to do business was not revived until after the various oral modifications of the contract which were pleaded and proved by the Trustee. See V.A.T.S., Art. 12.14, Title 122A, "Taxation—General."

Thus, the trial court should have rendered judgment for attorney's fees for the Trustee in the amount of $3,500.00 against G. A. Mallick, Inc., and George Mallick, Jr., rather than against the fund on deposit in the registry of the court.

It was error for the court to order the costs of suit paid out of the fund on

deposit in the registry of the court. The costs should have been assessed against G. A. Mallick, Inc., Geo. Mallick, Jr., Morris R. Antweil, St. Francis Village, Inc., and Aetna. Mallick et al. were not distinterested interpleaders or mere stakeholders. Affirmative judgments have been granted against them in excess of the amount paid into court. They failed to exercise that degree of diligence and impartiality which the law requires of a stakeholder. National Life & Accident Ins. Co. v. Thompson, 153 S.W.2d 322 (Waco Civ.App., 1941, refused).

All points of error and counterpoints not otherwise disposed of by this opinion are overruled.

The judgment of the trial court is affirmed in part and reversed in the limited particulars above indicated and same shall be and is hereby reformed in such particulars consistent with the holdings of this opinion and the judgment as reformed is affirmed.